Mr. Chief Justice Bingham
delivered the opinion of the Court:
From the bill of complaint it appears that one Joseph Combs, having a claim amounting to $82,000 against the United States, growing out of a seizure by the Government, in 1863, of a steamer of which he was the owner, employed one William Fitch, a claim agent at Washington, to collect the claim. The contract of employment was prepared in *609 writing by J. M. Yznaga, the stepson and attorney of Combs.
This contract, which was limited in time, expired by its own limitation. Thereupon another contract, unlimited as to time, was entered into between Combs and Fitch on the 31st of January, 1868.
The agreement was also prepared and put in writing by Combs’ attorney and stepson, J. M. Yznaga.
The plaintiff avers that Fitch spent considerable time and money in the preparation of papers and prosecution of the claim against the Government, but that in June, 1868, he, Fitch, at the earnest solicitation of Combs and his friends, consented to relinquish this contract, in consideration that Combs, with one S. G. Cabell, should agree to pay him $1,000 out of the proceeds of this claim when collected. Accordingly the contract between Combs and Fitch w'as rescinded, and Combs with Cabell executed to Fitch an agreement, as follows:
“$1,000. Washington, D. 0., June 18, 1868.
“For value received in services rendered and a further consideration of giving up the contract between Joseph Combs and William Fitch for collecting a claim against the United States Government for the steamboat Louisville, we jointly and severally, or either of us, promise to pay to William Fitch, or his order, the sum of one thousand dollars out of the money, assoon as collected from the Government of the United States, on said claim for said steam boat Louiaville‘
“Jos. Combs.
“S. G. Cabbll.”
The bill show's that Combs died in the city of Washington, on May 10, 1879; that he was intestate as to personal property, but testate as to real property; that he devised certain real estate in the city of Washington to his wife, Emma M. Combs, in fee simple. That Columbus Alexander was appointed administrator of the personal estate of *610 Joseph' Combs, and that he executed, for a valuable consideration, an assignment of this instrument to James Jackson, jr., the plaintiff, on the 26th of April, 1881, some two years after the death of Combs.
The bill further alleges that Combs, in his life-time, collected the claim of $82,000 from the Government of the United States; that it was paid to him on January 27,1871; but that the first information had by the plaintiff of its payment was derived from a newspaper paragraph, in the city of Washington, on or about April 8, 1882. The averment is made that Fitch used all proper means to ascertain as'to the collection of said claim, and it is charged that Combs and Cabell, and the defendant, Emma M. Combs, and the said Yznaga, well knew about the collection of said claim, and that the knowledge of its collection was fraudulently concealed from the plaintiff and said Fitch by said named parties, with intent to avoid or escape, if possible, the payment of the money due under the agreement, and with the intention or hope that, by permitting a sufficient time to elapse, the Statute of Limitations might be pleaded in any suit brought to enforce said agreement.
The plaintiff avers that Combs, as soon as he collected this claim, became, by virtue of the contract between Combs and Fitch, the trustee of the plaintiff, and that it was the duty of Combs to make known the payment of the claim and to pay to Fitch or his order the $1,000 out of that sum. He charges that no part of it has been paid." That the personal estate is insufficient to pay it, and that there is due him the sum of $1,000, with interest from January 27,1871, the day of payment to Combs of the $82,000, and he therefore prays that the realty in the possession of Mrs. Combs may be subjected to the payment thereof.
The issue presented to the court is raised by the answer of the defendant, Emma M. Combs, the only part of which necessary to be considered is as follows:
“In further answer this defendant says that she is in *611 formed and believes, and therefore charges, that plaintiff is the son-in-law of said Fitch, and that said written obligation was transferred to said Jackson without any consideration being paid therefor; that said claim described in said bill of complaint is stale, unjust and inequitable, and that the said supposed cause of action described in said bill did not accrue to plaintiff at anytime within three years before the commencement of this suit.”
The answer denies all charges of fraud.
Evidence was taken by the parties on the issue joined between them, relating principally to the question óf the Statute of Limitations and the question made by the plaintiff in his bill: that the payment of this money to Combs by the Government was fraudulently'concealed from Fitch, so that for more than three years after the death of Combs Fitch was in ignorance of the fact of payment.
Counsel for the plaintiff, in his argument, while disclaiming that he is entitled to recover this money from the defendant upon the ground that Combs was constituted by this agreement a trustee, and that 'the money collected by him was a'trust fund, yet claims that the relation of trust, nevertheless, did exist, and that for the purpose of preventing the Statute of Limitations running against this claim, the court should hold that such trust relation bound the obligors and their representatives to make disclosure of the payment of the claim.
In our opinion, however, this instrument was nothing more than an ordinary agreement binding Combs to the payment of $1,000 out of this fund when collected. It did not create the relation of trustee and cestui que trust between these parties, nor did it impose any condition upon Combs in relation to the matter different from that of an ordinary debtor. While he had no right to use any artifice to conceal from Fitch the fact of the payment of this money, it was not his duty to seek Fitch to inform him that it was paid.
*612 The money was collected from the Navy Department of the United States, so far as we are advised by the record, in the usual mode in which such claims are collected. There is no proof that inquiry was ever made of Combs during his life-time as to whether the money had been paid; nor is there any proof that Combs ever used any artifice whatever to conceal the fact of payment from Fitch, or that there was any fraudulent concealment of the fact of payment by either Mrs. Combs or Cabell or Mr. Yznaga, who was the attorney of Combs during his life-time. In fact, the evidence shows that none of these parties except Combs knew anything about the payment of this money at an earlier date than Fitch and the plaintiff. It appears from the evidece that Combs himself, after the payment of this money and until the time of his death, was most, if not all of the time, absent from the city of Washington, and it does not appear that any inquiry was made of him as to whether he had collected this money or not. Fitch could easily have put Combs in such a position that his concealment of the fact would have been fraudulent, by addressing to him an inquiry on the subject. A refusal to answer, or false information, would have taken the case out of the statute. It is in evidence that Mr. Cabell, a short time after the pajunent of this money, went to Fitch and sought to .take up this paper by offering him 10 cents on the dollar for it; which sum Fitch refused to receive; but all the evidence is to the effect that Cabell did not then know that the money was collected, and did not afterwards, until he saw the article in the newspaper referred to in the bill.
Our attention has been called by counsel for the plaintiff to several cases supposed to be in point, but upon examination of them we find that they are all to the effect that where an action is brought against a party for the commission of fraud, the statute will not run, even though the defendant has not been guilty of any active efforts to conceal the cause of action, but that the action may be maintained *613 for the fraud at any time within the statutory period after its discovery by the plaintiff, the only qualification being that the plaintiff should have exercised reasonable diligence under the circumstances to discover the fraud. But that is very different from the case at bar. This is in effect simply an action to recover upon the contract. The Statute of Limitations having been pleaded, it is replied that the defendant fraudulently concealed the'fact that the cause of action had accrued. This is not the exact form, but is the legal effect of the issue as presented. Under such circumstances the rule of law is that, unless by virtue of the contract itself or by some relation of the parties, the defendant was under a duty to make known the fact of payment, the defendant’s mere silence amomrting to nothing more than non-action, is not such a fraud upon the plaintiff'as entitles him to complain. There was no duty resting on Combs to seek Fitch to make the fact known that he had collected this money, and he was gifilby of no active fraud, nor of any act the tendency of which would be to deceive, but merely, as far as the evidence shows, maintained silence upon the subject.
The decree of the court in special term is affirmed and the bill dismissed.