# HORNBLOWER *v.* GEORGE WASHINGTON UNIVERSITY.

---

TRIAL; DIRECTION OF VERDICT; STATUTE OF LIMITATIONS; ACKNOWLEDGMENT AND NEW PROMISE; ESTOPPEL.

1. It is within the power of the trial court to direct a verdict for the defendant on the opening statement to the jury of counsel for the plaintiff; but the power to do so should not be exercised unless it clearly appears from such statement that the plaintiff cannot recover. (Following *Brown* v. *District of Columbia,* 29 App. D. C. 273.)

2. The cause of action of an architect for compensation for his services in designing a building and superintending its construction accrues when he approves the final bill of the contractors, when it will be presumed the work was completed, and not later, when he sends in a bill for his services; and the Statute of Limitations begins to run from the date of such approval, and not from the date of the presentation of his bill.

3. A letter by a debtor corporation to its creditor, stating that the latter's disputed claim had been referred to one of its officers for adjustment, will not constitute an acknowledgment and new promise sufficient to remove the bar of the statute of limitations. (Citing sec. 1271, D. C. Code, 31 Stat. at L. 1390, chap. 854.)

4. While a defendant cannot avail himself of the bar of the statute of limitations if he did anything to induce the plaintiff to delay bringing suit, a mere agreement to arbitrate and the selection of an arbitrator, not followed up by any steps by the plaintiff to have the matter submitted, or any act by the defendant to prevent submission, will not estop the defendant from relying on the statute.

5. While a plea of recoupment alone, by a defendant, is equivalent to an admission of the plaintiff's claim, a plea of *non assumpsit* accompanied by a notice of recoupment will not have that effect.

No. 1802.   Submitted February 12, 1908.   Decided March 31, 1908.

HEARING on an appeal by the plaintiffs from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action of assumpsit.   *Affirmed.*

The COURT in the opinion stated the facts as follows:

This suit was brought in the supreme court of the District of Columbia by the appellants Joseph C. Hornblower and James Rush Marshall, copartners in business under the firm name of Hornblower & Marshall, plaintiffs below, to recover from the appellee, the George Washington University, defendant, a balance of $1,605.64, with interest from July 1st, 1903, for services alleged to have been rendered in designing and superintending the construction of two buildings for the defendant corporation.   Defendant pleaded *non assumpsit,* and the bar of the statute of limitations, and gave notice of re-

couping damages for neglect of duty to the full amount claimed in plaintiffs' declaration. A jury was impaneled to try the case, and, on completion of the opening statement of counsel for the plaintiffs, the court directed the jury to return a verdict for the defendant. From the judgment rendered thereon, plaintiffs have appealed to this court. They assign as error: "First, that the court erred in refusing to let the plaintiffs go to the jury; second, in directing a verdict for the defendant."

It appears from the record that plaintiff's action was brought on June 30, 1906. Counsel for plaintiffs made the following opening statement to the jury: "On the 1st of July, 1903, plaintiffs considered their services at an end, and sent in their bill, which was 5 per cent of the cost of the buildings. There was a delay in the payment of their bill and some objection made, whereupon plaintiffs agreed to leave the matter of their compensation to some fair-minded third person. The defendant doing nothing towards paying this bill, the plaintiffs finally informed them that, unless the bill was paid, they would be obliged to bring suit. In May, 1905, the plaintiffs drew up the necessary papers, which later they filed in this suit. At that time, however, being reluctant to bring a suit and make public the fact that the defendants were not paying their bills, the plaintiffs obtained from the defendants a promise that they would submit the subject-matter of the bill to arbitration. Chief Justice Nott, of the court of claims, was named as the person to act in the premises, but, upon applying to him, he declined to act as arbitrator. The parties then agreed upon Lewis J. Davis. Mr. Davis agreed to act, and the plaintiffs were ready to submit their side of the case to him. Mr. John Joy Edson, one of the officials of the defendants, acted for them. Mr. Edson delayed, and so some time elapsed, until at length plaintiffs became satisfied that the agreement to arbitrate was not going to be carried into effect,—at least, nothing was done in that direction; and they thereupon filed their suit. The plaintiffs are now in a position where a third party can examine the items of the bill, and this is just what they had been wanting to accomplish. They will submit the question of what is due

them to the verdict of a jury." It was further admitted by counsel for plaintiffs that the contractors' bills for the construction of these buildings were approved by the plaintiffs for payment on March 13, 18, and 21, 1903, respectively, and that the last contractor's bill was paid on June 24, 1903. The court then asked counsel for plaintiffs upon what ground he expected to show that the bar of the statute of limitations did not apply, to which counsel replied:

"First. Though the contract was oral, that Mr. Hornblower, in fact, did work of this kind as late as May 4th, 1903; that, in the case of the law school building, formerly planned and supervised by the plaintiffs, they had waited a reasonable time after the building was completed before they considered their services at an end, and sent in their bill; that this was the custom of plaintiffs, although the plaintiffs were not prepared to prove that it was the universal custom of architects, but it was the custom of this firm.

"Second. That the plaintiffs would prove the sending of a letter by the defendants, through their president, Dr. Needham, to plaintiffs as follows:

"George Washington University.
        Washington, D. C., December 22, 1905.
"Dear Sir:—

"I have your favor of the 21st instant and have referred it to Mr. Edson, to whom, as I told you, the matter of your claim was referred by the executive committee for adjustment.
            "Very truly yours,
                "Charles W. Needham.
"Mr. Joseph C. Hornblower, Washington, D. C.

"That this letter constituted a written acknowledgment by the defendants of the indebtedness and an implied promise that the defendant would pay what was found due upon the adjustment.

"Third. Plaintiffs will show that Mr. Hornblower was waiting for Mr. Edson to go before Lewis J. Davis, and that a

considerable time elapsed while the plaintiffs were expecting the defendants to act in accordance with their agreement to refer the subject-matter to the decision of Mr. Davis; that, as soon as plaintiffs were satisfied that the defendants would not carry out their agreement to submit to arbitration, they filed their suit.

"Fourth. That, the defendants having given notice of recoupment, and having admitted at the trial that they intended to proceed in accordance with that notice, they (the defendants) are not entitled to rely upon the statute of limitations."

When this statement, in reply to the question of the court, was concluded, the record discloses: "The court asked counsel for plaintiff whether this statement was all of the case. Counsel replied, 'Yes, your honor;' and so the fact was. Whereupon the court granted the motion of defendant and directed the jury to find a verdict for the defendant, which was accordingly done."

*Mr. Frank W. Hackett,* for the appellants:

The practice of taking a case from the jury on the opening is recent in this jurisdiction. *Jones* v. *Railroad Co.* 5 Mackey, 8. It must clearly appear that there can be no recovery. *Oscanyan* v. *Arms Co.* 103 U. S. 261. Here it by no means "clearly appears" that the statute bars the suit.

1. The date of payment to contractors had nothing to do with the termination of the architects' services. It is mere assumption to take the time of the completion of the building as the date when their services under the contract came to an end. Counsel stated to the court that he proposed to prove the date of that termination by showing that for a reasonable time after they had approved bills of the contractors, the plaintiffs held themselves in readiness to attend to anything that might be needed because of a defect in the building; that frequently defects do not show themselves until some time after occupancy. The statement amounted to a notice that facts would be laid before the jury tending to establish in proof the date when the contract for services ended. The question of the date

when the plaintiffs' cause of action accrued was for the jury to determine, under proper instructions from the court. It rested on the determination of the fact when the services of the plaintiffs had ended.

It is error to direct a verdict where the decision of the case depends on a disputed question of fact, *First Nat. Bank* v. *Hunter*, 45 Atl. 351; *Richardson* v. *Fellner*, 60 Pac. 270.

The case falls within the rule laid down in *Jones* v. *Railroad Co.* 5 Mackey, 8, that the opening statement must form a complete case, and that there must be no doubt that the court has before it all the facts.

2. The letter of December 22, 1905, informing plaintiffs that their claim had been "referred by the executive committee," to Mr. Edson "for adjustment" removed the bar of the statute. It is an acknowledgment in writing that something was due the plaintiffs. The language implies a promise to pay what should be found due upon the adjustment. It is sufficient, under sec. 1271 of the Code, to take the case out of the operation of the statute of limitations. *Walsh* v. *Mayer*, 111 U. S. 31. The Code of Mississippi, construed in that case, is identical with that of sec. 1271 of our Code.

President Needham's words admit a liability, and the acknowledgment of that liability is unconditional. See language of Gray, J., *Shepherd* v. *Thompson*, 122 U. S. 238.

If the debtor means that the indebtedness continues to exist, and that he will pay it, the acknowledgment is sufficient. The promise to pay need not be expressed. This doctrine is followed by this court in *Ruppert* v. *Beavans*, 2 App. 298.

The acknowledgment must be unconditional. But it is not necessary that the promise specify the amount which the defendant is to pay. It is enough that something is admitted to be due, and parol evidence is admissible to prove the amount, Wood, Limitations, sec. 68, 3d ed. pp. 133–4.

The letter unequivocally acknowledges that the University is indebted to plaintiffs. The only thing left in doubt is the extent of that indebtedness. The president is not making a promise that the claim will be adjusted. He informs the plain-

tiff that the bill sent in for the balance due on the contract had previously been referred by the executive committee to one of the trustees for him to adjust. This means nothing else than that Mr. Edson is to ascertain whether the amount named in the bill be correct.

The promise is identical with that of defendant in *Langrish* v. *Watts* [1903] 1 K. B. 639. At the trial below, Bruce, J., held that the letters did not amount to an acknowledgment that £100 were due, but he further held, on the authority of *Brance* v. *Sympson,* Kay, 678, that they amounted to a conditional promise to pay what, upon an account being taken, might be found to be due; and, the condition being fulfilled, the plaintiff could recover, notwithstanding the statute of limitations. Lord Justice Vaughan Williams, in sustaining the ruling, says: "Where a defendant in effect has said that he does not think that he owes so much as is claimed, but if vouchers are furnished he will pay whatever is due, that is an acknowledgment of a debt subject to the business operation of ascertaining the amount being gone through." See cases cited in *Langrish* v. *Watts; Colledge* v. *Horn,* 3 Bing. 119; *Quincy* v. *Sharp* (1876) 1 Exch. Div. 72; *Sidwell* v. *Mason,* 2 H. & N. 309; *Skeet* v. *Lindsay,* 2 Exch. Div. 314; *Rumsey* v. *Settle,* 120 Mich. 326.

The Needham letter was a promise to pay what any fairminded man should say was due, the reference to Mr. Edson— one of the trustees—being simply to ascertain what was in fact due. There was no thought that Mr. Edson would not attend to this duty. The promise was to pay what could fairly be considered as due upon an examination of the facts of the case. The substitute of a present jury for Mr. Edson does not travel out of the meaning and intention of the defendant's promise to pay. It is not a conditional promise, but an acknowledgment which implies a promise, and thus repels the bar of the statute.

3. Defendants are estopped from pleading the statute because of their agreement to arbitrate made before the cause of action was barred.

Cases in the books are not numerous where a suit has been brought after an agreement to arbitrate, and after time has

elapsed pending such agreement.    Parties agreeing to arbitrate usually keep their agreements.

But the point was raised in *Davis* v. *Dyer,* 56 N. H. 145, where it was held that it was for the jury to determine whether defendants had not induced plaintiff to postpone bringing his suit by the agreement to refer, and to perform the award, for the period of time during which his legal right to commence a suit was thus put in abeyance by the agreement.    See note to *Chesapeake & N. R. Co.* v. *Speake,* 63 L.R.A. 198.

4. Defendant, by proceeding under notice of recoupment, waives the statute.

The defendant has elected to recoup, instead of pleading in set-off, or filing a counterclaim.    A plea of recoupment admits that the plaintiff has a cause of action.    *Mason* v. *Heyward,* 3 Minn. 121; *Davidson* v. *Remington,* 12 How. Pr. 312; *Boston Silk Mills* v. *Lull,* 37 How. Pr. 301.

Defendant's announcement of an intention to proceed under the notice of recoupment converted that notice into a plea. This plea is (1) inconsistent with the plea of the statute; (2) an acknowledgment of a subsisting indebtedness that supports an implied promise to pay whatever amount of the plaintiffs' claim the defendant shall fail to satisfy the jury should be disallowed.

*Mr. William F. Mattingly* and *Mr. Walter C. Clephane* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is well settled that, where counsel, in his opening statement to the jury, fails to state a cause of action, it is within the power of the trial court to render judgment upon such statement for the defendant.    *Oscanyan* v. *Winchester Repeating Arms Co.* 103 U. S. 261; 26 L. ed. 539; *Brown* v. *District of Columbia,* 29 App. D. C. 273.    The trial court, however, should not exercise this power unless it clearly appears from the plaintiffs' own statement that he cannot recover.    This is a con-

clusion that trial courts rarely reach, and a rule that should not be applied except in cases where the statement clearly shows that no cause of action exists. The rule laid down in *Oscanyan* v. *Winchester Repeating Arms Co.* supra, and approved in the case of *Butler* v. *National Home,* 144 U. S. 72, 36 L. ed. 351, 12 Sup. Ct. Rep. 581; is as follows: "Of course, in all such proceedings, nothing should be taken without full consideration against the party making the statement or admission. He should be allowed to explain or qualify it, so far as the truth will permit; but if, with such explanation and qualification, it should clearly appear that there could be no recovery, the court should not hesitate to so declare and give such direction as will dispose of the action." The reason assigned by the trial court in the case at bar for directing a verdict was that, from the statement of counsel for plaintiffs, it appeared that the action was barred by the statute of limitations.

Referring to the four grounds upon which counsel for plaintiffs stated that he expected to prove that the bar of the statute did not apply, we will dispose of them in the order stated:

1. Counsel stated that plaintiffs intended to prove a custom that they had of waiting a reasonable time before submitting their bills for payment. Plaintiffs could not avail themselves of evidence to this effect. The date of presenting a bill for payment does not establish or fix the date when the bill became due, or when the indebtedness, if any, accrued. The question here to be determined is, When did the indebtedness, as claimed by plaintiffs, accrue? They were the architects in charge, superintending the construction of the buildings, and it seems to have been their duty to approve the bills of the contractors. It appears from the statement that the last bill was approved March 21, 1903. We must assume that in this they performed their duty. The bills, it will be presumed, were not approved for payment until the work was finished and completed. This, we think, must be considered the date when the services of plaintiffs terminated, and any claim they may have had for services rendered immediately accrued.

2. Did the letter written by the president of defendant corporation to Joseph C. Hornblower on December 22, 1905, rescue this case from the operation of the statute of limitations? This letter neither acknowledges any indebtedness, nor names any amount, but simply states that the claim of plaintiffs had been referred to Edson for adjustment. It is not for the court to presume what that adjustment would have shown, nor to presume that because the letter referred to a claim that there must have been an existing indebtedness, or that such reference constituted an admission of indebtedness on the part of the president.

Sec. 1271 of the Code [31 Stat. at L. 1390, chap. 854] provides, among other things, that, "in actions of debt or upon the case grounded upon any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract whereby to take any case out of the operation of the statute of limitations, or to deprive any party of the benefit thereof, unless such acknowledgment or promise shall be made or contained by or in some writing to be signed by the party chargeable thereby." A number of cases, English and American, are cited by counsel for plaintiffs in support of the claim that the letter written by President Needham should operate to stop the running of the statute of limitations in favor of the defendant corporation. A careful examination of the decisions cited discloses that in each case the writing relied upon acknowledged a debt due from the writer. This seems to be the test. There must be some statement that is equivalent to an acknowledgment of indebtedness. In fact, the rule announced in this country seems to go further and require that there shall not only be an acknowledgment of indebtedness, but a promise to pay. In *Shepherd* v. *Thompson,* 122 U. S. 231, 30 L. ed. 1156, 7 Sup. Ct. Rep. 1229, a case appealed from the supreme court of the District of Columbia, the leading decisions in this country and many English cases are referred to and reviewed. The following rule, announced by Mr. Justice Story in *Bell* v. *Morrison,* 1 Pet. 351, 7 L. ed. 174, after quoting from the

opinions in *Clementson* v. *Williams,* 8 Cranch, 72, 3 L. ed. 491, and *Wetzell* v. *Bussard,* 11 Wheat. 309, 315, 6 L. ed. 481, 483, is quoted and adhered to: "We adhere to the doctrine thus stated, and think it the only exposition of the statute, which is consistent with its true object and import. If the bar is sought to be removed by the proof of a new promise, that promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate; and, if any conditions are annexed, they ought to be shown to be performed. If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways,—we think they ought not to go to the jury as evidence of a new promise to revive the cause of action." In the same case, the court quoted with approval the language of the court in *Bell* v. *Rowland,* Hardin (Ky.) 301, 3 Am. Dec. 729, as follows: "Upon the whole, we are of opinion that the only safe rule that can be adopted, capable of any reasonable degree of certainty, is that, in order to take the case out of the statute of limitations, an express acknowledgment of the debt, as a debt due at that time (coupled with the original consideration); or an express promise to pay it,— must be proved to have been made within the time prescribed by the statute." In the case at bar there is neither an admission of indebtedness, nor a promise to pay on the part of Needham, as the representative of defendant company. No reasonable inferences can be drawn from the letter that would present a proper issue for submission to a jury. Our attention has been called to no case where a writing, such as appears in this case, has been held to constitute such an acknowledgment of in-

debtedness and promise of payment as would revive an obligation barred by the statute of limitations.

3. It is contended that the agreement to submit this controversy to arbitration operated to stop the running of the statute of limitations. We think it is a well-settled principle that a defendant cannot avail himself of the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute' to run against him. If, by this agreement to arbitrate, it appears from the record that plaintiffs, by the action of the defendant, were induced not to bring their suit, then we think defendant would be estopped from pleading the bar of the statute of limitations. If, however, after the agreement was made to submit to arbitration, plaintiffs took no steps toward having the matter submitted, and did not insist upon the defendant's submission of the matter, such an agreement, we think, cannot be held to stop the running of the statute. It not only appears from the statement in this case that plaintiffs took no steps toward having a hearing before the arbitrator, but there is no affirmative showing that defendant did anything to prevent the arbitration. It is not sufficient, if it should appear, that defendant failed, or even refused, to appear before the arbitrator and submit its case. Defendant must have done something that amounted to an affirmative inducement to plaintiffs to delay bringing action. The statement does not indicate that plaintiffs were deterred or delayed in bringing their suit because of the failure of the parties to appear and submit the matter to the arbitrator. Inasmuch as defendant is not shown to have used the agreement to arbitrate as a means for inducing plaintiffs to refrain from bringing suit until barred by the statute of limitations, we think the selection of an arbitrator amounted to nothing more than a part of the negotiations between the parties looking to an amicable adjustment of their differences.

4. Counsel for plaintiffs stated that he expected to escape the bar of the statute of limitations on defendant's notice of recoupment. Defendant did not even plead a set-off. It pleaded

*non assumpsit* and the bar of the statute of limitations. It gave notice that it would seek to recoup the damages sustained by reason of the negligent manner in which plaintiffs performed their work. Even if defendant had entered a plea of recoupment, coupled with *non assumpsit,* it would not amount to an admission of the existence of a cause of action, for the plea of *non assumpsit* is a denial of liability. It is well settled that the plea of recoupment alone by a defendant is equivalent to an admission that the plaintiff has a cause of action; but that is not this case. The burden was upon plaintiffs to establish their right of recovery, and defendant, upon the issue tendered, was entitled to interpose any available defense.

The judgment is affirmed with costs, and it is so ordered.

*Affirmed.*