**Russell Morton BROWN, Appellant,**

v.

**Edward Oliver LAMB and Dispatch, Inc.,
Appellees.**

**No. 21686.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 10, 1968.

Decided July 17, 1969.

Mr. Milton M. Burke, Washington, D. C., for appellant.

Mr. N. Meyer Baker, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

PER CURIAM:

In this suit to collect legal fees, the issue before us is the propriety of the trial court's grant of judgment in favor of appellees notwithstanding a jury verdict for appellant. The fees in question were billed on June 18, 1957, and there is no dispute that the applicable three-year statute of limitations, 12 D.C.Code § 301(7) (1967), would normally have run in June of 1960. Appellant, however, had successfully resisted a pretrial motion for summary judgment on representations that there were material issues of fact to be tried with reference to whether appellees were estopped from pressing the limitations defense. At the close of the trial, as to the conduct of which no procedural errors are alleged by appellant, the jury found for appellant. The trial court, on appellees' motion, entered judgment for them upon its finding that "the statute of limitations had run prior to the filing of this action, and that

---

no evidence was adduced at trial of a character requisite for taking this action out of the statute of limitations."

In this court appellant argues essentially that there was evidence in the record adequate to support a jury conclusion that appellees were estopped from claiming the shelter of the statute, and that the grant of judgment n. o. v. could only represent error by the court in either (1) its appraisal of the evidence by reference to an estoppel standard or (2) in concluding that as a matter of law the limitations statute does not under any circumstances yield to the estoppel principle. In this latter regard, appellant points to the fact that, in granting the judgment n. o. v., the trial court included in its authorities a citation of 28 D.C. Code § 3504 (1967).[1] It can be argued that that statute evinces a Congressional purpose to make a written promise or acknowledgment the exclusive escape route from the rigors of the limitations period. If this interpretation of section 3504 was at the root of the trial court's ruling, then the ruling was wrong, says appellant, because the interpretation is wrong.

The record presents some ambiguities with respect to the precise role played by section 3504 in the trial court's thinking. There are expressions in the transcript, before the submission of the case to the jury and in connection with appellees' motion for a directed verdict, which are subject to the inference that the court was preoccupied with the writing requirement of section 3504 as a possibly absolute command admitting of no other exceptions to the bar of the statute of limitations.[2] In its final disposition, however, the court's citation of that statute was accompanied by a reference to cases in this jurisdiction which indicated that the doctrine of equitable estoppel can prevent a suit from being barred by the statute of limitations.[3] Most impor-

1. This provides in relevant part:

> In an action upon a simple contract, an acknowledgment or promise by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations or to deprive a party of the benefit thereof unless the acknowledgment or promise is in writing, signed by the party chargeable thereby.

The D.C.Code provision, which has its counterpart in the statute books of nearly every state, is based on Lord Tenderden's Act, 9 George IV, Ch. 14, § 1 (1828). See 1 Wood, Limitation of Actions § 82 (1916).

2. This restrictive interpretation of § 3504 was vigorously urged upon the trial court by appellees in support of their motion for a directed verdict. Acceptance of this argument would have meant, at most, that the court would have left to the jury only the question of whether there was a writing within the meaning of § 3504. But the court decided to deny the motion, and thereafter proceeded to instruct the jury, first on the need that a "new promise" or "acknowledgment" be in writing, and thereafter on the separate issue of the estoppel exception. Its instruction on the estoppel issue was unexceptionable in that it did not suggest that § 3504 required an es-

toppel to be based only on written evidence and could not consist of oral conversations alone.

3. The court cited Hornblower v. George Washington University, 31 App.D.C. 64 (1908); Moore v. Snider, 71 App.D.C. 293, 109 F.2d 840, cert. denied, Snider v. Moore, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1029 (1940); and Howard University v. Cassell, 75 U.S.App.D.C. 75, 126 F.2d 6 (1941), cert. denied, Cassell v. Howard University, 316 U.S. 675, 62 S.Ct. 1046, 86 L.Ed. 1749 (1942). In Hornblower the court, after determining that a letter was not sufficient evidence to amount to a new contract, went on to consider whether an agreement by the parties to arbitrate created an estoppel, thereby barring the invocation of the statute of limitations. Although deciding that the facts presented did not establish an estoppel, because the defendant had not "done something that amounted to an affirmative inducement to plaintiffs to delay bringing action," the court did clearly state that:

> We think it is a well-settled principle that a defendant cannot avail himself of the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the

tantly, the court's instruction to the jury enunciated the estoppel approach, making it clear that on a proper factual showing relevant to that principle appellant could be relieved of the prescriptive restraints even though there was no written undertaking or acknowledgment. It seems clear to us that the court, with commendable prudence in terms of efficient judicial administration, submitted the estoppel issue to the jury on the theory contended for here by appellant despite its doubts about the adequacy of the evidentiary showing, and, when the jury came in with its verdict for appellant, granted judgment n. o. v. as contemplated by Fed.R.Civ.P. 50.

■■ This appeal is thus narrowly confined to the question of whether the trial court weighed the evidence wrongly for the purposes of Rule 50. Our close reading of the record does not warrant our saying that it did. We note in this regard that appellant's evidence was designed to show that appellant was lulled into inaction by the informal assurances of appellee Lamb which assertedly continued over a period of several years. But these alleged assurances and requests not to sue were not enough to keep appellant from bringing a suit for the fees in a state court of Ohio in April, 1959—a suit which is still pending. And it seems not unlikely that the three-year further delay in filing suit in the District of Columbia was induced less by Lamb's representations than by appellant's knowledge as a lawyer that he had a precautionary anchor to windward in the form of the Ohio suit. We do not think the District Court erred in concluding that the evidence fell short of showing the element of reliance to the degree required by the doctrine of equitable estoppel.[4]

Affirmed.

---

statute to run against him. If, by this agreement to arbitrate, it appears from the record that plaintiffs, by the action of the defendant, were induced not to bring their suit, then we think defendant would be estopped from pleading the bar of the statute of limitations.

In the *Cassell* case, this court quoted the above language from *Hornblower* with approval, and again found that on the facts presented an estoppel was not warranted.

4. Even if it be assumed that the trial court changed its mind about the propriety of its having submitted the estoppel issue to the jury, and granted the motion n. o. v. solely because it eventually embraced the position that § 3504 left no room for the operation of equitable estoppel based on unwritten evidence, the judgment *dismissing the complaint should still stand.* Such a reading of the statute would be incompatible with the spirit of our prior expressions on this subject, *see* n. 3 *supra*, and with the more persuasive authorities. *See* Albachten v. Bradley, 212 Minn. 359, 3 N.W.2d 783 (1942). "Among all the spheres of its activity estoppel probably plays no more useful service than the alleviation of hardship caused by statutes of limitation." Dawson, Estoppel & Statutes of Limitation, 34 Mich.L.Rev. 1 (1935). In the unlikely event that the learned trial court failed to consider the evidence in relation to the estoppel claim because of an erroneous interpretation of § 3504, our own review of the evidence for this purpose establishes its inadequacy to impose an estoppel. No person, especially a lawyer such as appellant here, could reasonably rely on the representations allegedly made by or on behalf of appellees.

We have also considered and find without merit the appellant's contention that the judgment n. o. v. should be reversed on the ground that the D.C. statute of limitations was tolled by the filing of the suit in Ohio. Burnett v. New York Central R. R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) is inapposite because (1) this is not an FELA case; (2) the Ohio suit filed by appellant was not dismissed on grounds of improper venue; and (3) appellant filed his D.C. suit more than three years after he filed in Ohio—in *Burnett* the plaintiff filed within eight days of the dismissal of the Ohio suit.