**James MONROE, Sr., Plaintiff,**

v.

**Hallem H. WILLIAMS, Defendant.**

**Civ. A. No. 87–1717(RCL).**

United States District Court, District of Columbia.

Dec. 15, 1988.

Mitchell R. Kreindler, Schnader, Harrison, Segal & Lewis, Washington, D.C., for plaintiff.

Harry T. Alexander, Jr., Asst. Corp. Counsel (Frederick D. Cooke, Jr., Corp. Counsel, Martin L. Grossman, Deputy Corp. Counsel, Paul A. Quander, Jr., Chief, Correctional Litigation, with him on the briefs), for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on plaintiff's motion for leave to file an amended complaint. Plaintiff originally brought this action *pro se*, seeking declaratory, injunctive, and monetary relief under Title VII of the Civil Rights Act of 1964, as amended, and under the Age Discrimination in Employment Act of 1967. After the Court's appointment of counsel to represent plaintiff, plaintiff now seeks, in an amended complaint, to delete his causes of action under Title VII and the Age Act, and instead ground his action on 42 U.S.C. § 1983.[1]

## FACTS

On February 22, 1982, the District of Columbia Department of Corrections hired plaintiff, a black male, along with eleven others, as a correctional officer; his first year, however, was to be probationary. On December 15, 1982, the Retention Interview Board, a body apparently charged with determining the future status of probationary employees, interviewed the plaintiff. On February 2, 1983, the then director of the Department of Corrections, James F. Palmer, sent plaintiff a letter informing him that his employment would be terminated as of February 4, 1983. In that letter, Mr. Palmer also informed the plaintiff that he could appeal the termination decision to the Office of Human Rights if he felt that the action was based on discrimination because of, among other things, sex or religion.

Following his termination, Mr. Monroe sought redress through several different means. In February, 1983, he obtained the aid of a union representative. On June 6, 1983, plaintiff filed a complaint with the District of Columbia Office of Human Rights ("DCOHR"). The DCOHR subsequently filed a parallel complaint with the EEOC. On May 18, 1984, the DCOHR issued a "no probable cause" determination and dismissed the complaint. On March

23, 1987, the EEOC issued a "notice of right to sue," having concluded that there was no reasonable cause to believe plaintiff's allegations. Finally, on May 26, 1987, Mr. Monroe filed an action with the Public Employee Relations Board ("PERB") which had dismissed the complaint in part; the part of the complaint relating to standards of conduct for labor organizations is still pending. Throughout this period, Mr. Monroe also sought the assistance of other government agencies, a congressman, and the Mayor. Plaintiff finally filed this action *pro se* on June 22, 1987.

In addressing plaintiff's motion to amend his complaint, we address first the standard we should apply in determining whether to grant the motion, and then we address plaintiff's argument that granting his motion to amend would not be "futile" because the statute of limitations arguably does not bar his new § 1983 claim.

## ARGUMENT

### A. *The Standard*

▌ Rule 15(a) of the Federal Rules of Civil Procedure states in relevant part that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party ... and leave shall be freely given when justice so requires." FED.R.CIV.P. 15(a). In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the United States Supreme Court gave meaning to the vague phrase "when justice so requires." In relevant part, the Court explained that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... *futility of amendment,* etc.—the leave sought should, as the rules require, be 'freely given.'" 371 U.S. at 182, 83 S.Ct. at 230 (emphasis added). The Court further elaborated that "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying

---

1. Plaintiff may not amend his complaint as of right since defendant had filed a responsive pleading before plaintiff filed his motion for leave to amend. *See,* FED.R.CIV.P. 15(a).

reason ... is not an exercise of discretion." 371 U.S. at 182, 83 S.Ct. at 230. Accordingly, a district court should grant a motion to amend unless there is a clear and solid justification for denying it.

Other courts have elaborated on when a motion for leave to amend may be denied due to "futility". It has been repeatedly held that an amended complaint is "futile" if the complaint as amended would not survive a motion to dismiss. *See, e.g., Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3rd Cir.1983), *cert. den.,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). For example, in *Banque de Depots v. National Bank of Detroit,* 491 F.2d 753 (6th Cir.1974), the Sixth Circuit affirmed the district court's denial of defendant-bank's motion to amend its answer in the form of an interpleader since the motion was "on shakey ground because of the questionable applicability of interpleader in this factual setting." 491 F.2d at 757. The court also denied defendant's motion to amend its answer to include a cross-claim for indemnification, since allowing such a cross-claim at that point in the litigation would have worked an "undue hardship" on the potential cross-claim defendant.

In *Bricker v. Crane,* 468 F.2d 1228 (1st Cir.1972), *cert. den.,* 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973), the First Circuit upheld the district court's denial of appellant's motion for leave to amend his complaint to add a claim of class-based discrimination, since the additional allegation "would not, in any event, suffice to state a claim under § 1985(3)." 468 F.2d at 1232. The court elaborated that "[appellant] has alleged no facts supporting the existence of such a class and admitted at oral argument that he might be the only class-member in [his state]." [2] 468 F.2d at 1233. The Seventh Circuit, in *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061 (7th Cir.1979), upheld the district court's denial of plaintiff's motion for leave to amend his complaint to add an additional defendant.

The court explained that plaintiff "asserted no facts to support a valid theory of liability [against the defendant]." 598 F.2d at 1063. Similarly, in *Glick v. Koenig,* 766 F.2d 265 (7th Cir.1985), the Seventh Circuit found that the district court did not abuse its discretion in denying plaintiff leave to amend his complaint, since the proposed amendment failed to state sufficient facts to overcome the absolute or qualified immunity accorded to the defendants. 766 F.2d at 269. Thus, this court should deny plaintiff's motion to amend his complaint if his amended complaint does not allege sufficient facts to survive a motion to dismiss.

Plaintiff cites *Richards v. Mileski,* 662 F.2d 65 (D.C.Cir.1981) in support of his argument that it is inappropriate to deny his motion for leave to amend his complaint on statute of limitations grounds. In that case, the district court had granted defendants' motion to dismiss on statute of limitations grounds before the issue had been fully briefed by the parties. Defendants had moved to dismiss before filing an answer, and the district court granted that motion without oral argument. 662 F.2d at 67 n. 2, 73. The District of Columbia Circuit reversed the district court's dismissal of the case and remanded for reconsideration pending "[t]he filing of an answer, raising the statute of limitations, allow[ing] both parties to make a record adequate to measure the applicability of such a defense...." 662 F.2d at 73.[3] The case at bar, by contrast, involves a motion to amend the complaint rather than a motion to dismiss. More significantly, the issue of equitable tolling has been fully briefed by both parties, particularly in plaintiff's reply memorandum, and defendants' opposition and supplemental oppositions thereto. Moreover, this court held a hearing on November 28, 1988 addressing solely plaintiff's motion to amend his complaint. *Richards,* accordingly, does not require this court to grant plaintiff's motion to amend

---

**2.** In his original complaint, appellant had relied on 42 U.S.C. § 1983; the court had held that his claim under § 1983 was barred by collateral estoppel. 468 F.2d at 1231.

**3.** The court also noted that "[w]e do not hold that use of a motion to dismiss is always improper to raise a statute of limitations defense...." 662 F.2d at 73.

his complaint[4].

## B. *Statute of Limitations*

It is quite clear that plaintiff's claim would be time-barred unless the applicable statute of limitations can be subject to estoppel or to equitable tolling. Plaintiff received his termination letter from the D.C. Department of Corrections on February 2, 1983[5], and filed his complaint in the present action on June 22, 1987. Thus, whether we accept one year or three years as the appropriate statute of limitations[6], plaintiff's claim would appear to be time-barred unless it is saved by the principles of estoppel or equitable tolling.

For the purposes of § 1983, "the length of the limitations period, and closely related questions of tolling and application are to be governed by state law." *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). Accordingly, in evaluating plaintiff's argument that principles of estoppel and equitable tolling should apply in this case, we look to District of Columbia law.

In his reply memorandum, plaintiff contends that defendants are estopped from asserting the statute of limitations or, alternatively, that the applicable statute of limitations must be equitably tolled in this case due to defendant's fraudulent concealment of the existence of plaintiff's right to file this lawsuit. We address first the estoppel argument.

## *Estoppel*

It is well settled that "a defendant cannot avail himself of the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him." *Hornblower v. George Washington University*, 31 App.D.C. 64, 75 (1908). In discussing what was meant by "lulling," the court elaborated that "[d]efendant must have done something that amounted to an *affirmative inducement* to plaintiffs to delay bringing action." 31 App.D.C. at 75 (emphasis added). In that case, defendant had agreed to submit the controversy to arbitration, although neither party apparently took steps to have it so submitted before the running of the limitations period. The court held that defendant was not estopped from asserting the statute of limitations as a defense after finding that defendant undertook no "affirmative inducement" to delay the action. That is, "[i]t not only appears ... that plaintiffs took no steps toward having a hearing before the arbitrator, but there is no affirmative showing that defendant did anything to prevent the arbitration." 31 App.D.C. at 75.

The doctrine enunciated in *Hornblower* has been interpreted narrowly in subsequent cases. *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C.1986). In *Grass v. Eiker*, 135 A.2d 153 (D.C.1957), appellant

---

**4.** The only perceptible benefit to plaintiff if we were to grant its motion for leave to amend its complaint and address this issue later on a motion to dismiss is that plaintiff could learn new facts through discovery to support his position. However, in order to make his estoppel argument, plaintiff must show that defendant somehow affirmatively acted to prevent him from filing suit. If defendant did prevent the filing of a suit in this manner, plaintiff should at least know enough to be able to allege the surrounding facts at this point without the benefit of discovery. Similarly, if defendant affirmatively acted to fraudulently conceal facts giving rise to the cause of action, plaintiff should know enough at this point to allege what those facts may be. In other words, if something prevented plaintiff from filing suit, he should know what that something is at this point, even though he may not be able to prove it yet.

**5.** The statute of limitations begins to run when facts forming the basis of a cause of action are discovered or reasonably should have been discovered with due diligence. *See, e.g., Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. 1987).

**6.** There is controversy in this Circuit as to whether the appropriate statute of limitations for the purposes of 42 U.S.C. § 1983 should be one year, which is the period prescribed for intentional tort actions in the District of Columbia, *see* D.C.Code § 12–301(4) (1981), or the three year catchall period for cases involving matters for which the applicable period is not specifically indicated, *see* D.C.Code § 12–301(8) (1981). District courts within this Circuit have disagreed. *See Hobson v. Brennan*, 625 F.Supp. 459 (D.D.C.1985) (3 years); *Williams v. District of Columbia*, 676 F.Supp. 329 (D.D.C.1987) (1 year).

claimed that appellee was estopped from asserting the statute of limitations as a defense because he lulled appellant into inaction by acknowledging the debt in question, in writing, by listing it in a report filed with the Securities and Exchange Commission. The court found no grounds for estoppel, since the listing of the debt "[a]t most represents a bare verbal promise to pay...." 135 A.2d at 154. In *Brown v. Lamb*, 414 F.2d 1210 (D.C.Cir.1969), *cert. den.*, 397 U.S. 907, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970) (per curiam) appellant appealed the trial court's granting of judgment for appellees notwithstanding a jury verdict for appellant. The trial court had granted appellee judgment n.o.v. on the basis of the statute of limitations. On appeal, appellant argued that there was sufficient evidence for the jury to have concluded that appellees were estopped from asserting the statute of limitations as a defense. 414 F.2d at 1211. This evidence consisted of informal assurances by appellee that he would pay the debt in question. In affirming the lower court, the District of Columbia Circuit explained that such informal assurances were not enough to lull a party into not filing a lawsuit. 414 F.2d at 1212.

In other cases, the court found that defendant was or may be estopped from asserting the statute of limitations as a defense, but only after it found that the defendant took affirmative steps to lead plaintiff to believe that the filing of a lawsuit would be unnecessary. Plaintiff in *McCloskey & Co. v. Dickinson*, 56 A.2d 442 (D.C.1947) several times demanded his overtime pay from his employer. Each time his employer responded that the matter was under consideration but that it had not yet been resolved. Finally, the employer advised plaintiff that the Wage and Hour Division of the Department of Labor had reached a decision, but that the decision would have to be approved by the U.S. Maritime Commission for whom the company had been working. The writer of one letter sent by the employer informed plaintiff that as far as he knew the Wage and Hour Commission had approved his claim, and that he would advise plaintiff when the Maritime Commission reached a decision.

56 A.2d at 442, 444. Plaintiff was never so advised. The court held that defendant was estopped from asserting the statute of limitations as a defense, explaining that since "it was entirely reasonable for plaintiff to rely on the words and conduct of defendant and to file no suit while his claim was being considered by the defendant ... [i]t is clear that [plaintiff] was affirmatively induced to take no action on his claim." 56 A.2d at 445.

In *Bailey v. Greenberg*, 516 A.2d 934 (D.C.1986), the court of appeals reversed the trial court's granting of summary judgment in favor of the defendant on statute of limitations grounds. Plaintiff in that case, upon informing defendant of her injury, filed a claim with the insurance company which defendant assured her would process her claim. The insurance company delayed her claim for approximately three years, during which period the insurance company also assured her or her attorney that the claim would be processed, but then finally informed her that it was not the defendant's insurer on the date of injury. After warning that *"Hornblower* and its progeny require concrete evidence to prove lulling," the court reversed the summary judgment verdict explaining that plaintiff may on remand be able to show that her delay in filing suit was induced by defendant's representations. 516 A.2d at 940; *accord Interdonato v. Interdonato*, 521 A.2d 1124 (D.C.1987) (court may not grant summary judgment on statute of limitations grounds if facts as alleged could support argument that defendant is estopped from asserting statute of limitations as a bar to suit).

Plaintiff in this case has not pled sufficient facts to show that he was affirmatively induced into delaying the filing of his suit. To show affirmative inducement, plaintiff relies entirely on a letter he received from then Director of the Department of Corrections, James F. Palmer, notifying plaintiff of his termination. In relevant part, Director Palmer informed plaintiff that if he felt that his termination was motivated by discrimination because of race, color, religion, sex, national origin,

etc., he could file an appeal with the Office of Human Rights, but that such an appeal must be filed within fifteen days following the effective date of the termination. The letter also explained to plaintiff where he could obtain information on how to file an appeal. Plaintiff's Reply Memorandum, May 9, 1988, Exhibit 2. The thrust of plaintiff's argument, accordingly, is that defendant affirmatively induced plaintiff into delaying his action by informing him of an immediate governmental remedy but not informing him of his right to file a lawsuit. Boiled down, plaintiff is claiming that defendant had a duty to cure plaintiff's ignorance of the law—that is, his ignorance of his legal right to file a lawsuit.

Certainly, defendant cannot have *induced* the plaintiff into failing to learn what he already should know. Indeed, plaintiff's position here is rather novel. In all of the foregoing cases cited in this memorandum opinion, plaintiffs argued that they knew of their right to file a lawsuit but were prevented from doing so by some act of defendant. For example, in *Bailey*, plaintiff argued that defendant induced her to believe that filing a suit would be unnecessary, not that he had prevented her from learning of her right to file a claim. Here, plaintiff is arguing that defendant prevented him from *learning* of his right to sue.[7] More significantly, even assuming defendant can be said to have induced the plaintiff into delaying the filing of his lawsuit, that inducement could not have been "affirmative." It is clear from the case law that defendant must have somehow acted *affirmatively* to prevent plaintiff from filing his lawsuit. For example, in *Hornblower*, it was not enough that defendant failed to submit the controversy for arbitration after agreeing to have the case resolved through arbitration; for the plaintiff to prevail, he would have to have shown that defendant affirmatively acted to prevent the case from being submitted to arbitration and that plaintiff's efforts to

submit the case were accordingly frustrated. Similarly, in *Eiker* and *Brown*, public acknowledgement of a debt and informal assurances of payment did not constitute affirmative inducement. In *McCloskey*, the court did find affirmative inducement, since defendant in that case explicitly and directly led plaintiff to believe that the controversy would be resolved without resort to litigation. Similarly, defendant in *Bailey*, also in a continuous series of contacts with plaintiff, appears to have led plaintiff to believe that compensation from the insurance company would be forthcoming so that the filing of a lawsuit would be unnecessary. In this case, by plaintiff's own allegations, Director Palmer merely informed plaintiff of what his most direct remedy was and did not in any affirmative way induce plaintiff to believe that he could rely on this remedy rather than filing suit. He did not promise success before the Office of Human Rights, or even indicate that an appeal to the Office of Human Rights was the best or only remedy or that there were not other remedies he could pursue at the same time. The Director merely informed plaintiff of his most immediate remedy. Indeed, acceptance of plaintiff's argument here would amount to adoption of new law requiring every employer who informs a terminated employee of any immediate remedies to also remind them of their legal right to sue. We see no need to adopt such a general rule. Therefore, plaintiff has not alleged facts that could support an argument that defendant must be estopped from asserting the statute of limitations as a defense.

*Fraudulent Concealment*

Plaintiff also argues that the statute of limitations should be equitably tolled due to defendants' fraudulent concealment of his right to file a lawsuit. If a court determines that a party has fraudulently concealed the existence of a cause of action, the limitations period shall be tolled until plaintiff knows, or by exercise of due

---

7. In any case, plaintiff learned on his own about several other possible remedies, as he enumerates in his affidavit, so it is not clear why he was prevented from learning about his right to sue and not about these other remedies. *See* Affidavit of James S. Monroe, Sr., Plaintiff's Reply Memorandum, Exhibit 1, May 9, 1988.

diligence[8] should know, that he may have a cause of action. *Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992, 995 (D.C.1978). In order for the doctrine to apply and toll the statute of limitations, "defendant must have done something of an *affirmative nature* designed to prevent discovery of the cause of action." *William J. Davis, Inc. v. Young,* 412 A.2d 1187 (D.C.1980) (emphasis added). Since this doctrine, like the estoppel doctrine, focuses on whether defendant has acted *affirmatively* to prevent plaintiff from filing his claim, the result is likely to be the same, that is that it shall not require the statute of limitations to be tolled in this case. Indeed, plaintiff in making his argument here relies on the same letter from the former director of the D.C. Department of Corrections that he relied on in making his estoppel argument.

The fraudulent concealment doctrine was enunciated early in *Jackson v. Combs,* 18 D.C. (7 Mackey) 608 (1888). In that case, Joseph Combs had agreed to pay William Fitch a portion of his claim against the United States as soon as he received satisfaction on the claim. The issue before the court was whether the statute of limitations should be tolled because Combs did not tell Fitch that the United States paid him when it did pay him, so that neither Fitch nor his representatives knew of his cause of action until after the limitations period had already run. The court found no fraudulent concealment, since there was no evidence that "Combs ever used any artifice ... to conceal the fact of payment from Fitch." 18 D.C. at 617. The court elaborated that "Fitch could easily have put Combs in such a position that his concealment of the fact would have been fraudulent, by addressing to him an inquiry on the subject. A refusal to answer, or false information, would have taken the case out of the statute." 18 D.C. at 612. Another case, *Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992 (D.C.1978),

involved a malpractice suit against plaintiffs' former attorneys for legal malpractice; defendant-attorneys allegedly failed to timely file plaintiffs' claim. Plaintiffs contended that the defendants fraudulently concealed the running of the statute of limitations on the underlying claim defendants were handling for them. The court held that the fraudulent concealment doctrine could not apply to toll the statute of limitations in that case because there was no evidence that defendants concealed their alleged malpractice with "affirmative misrepresentations." 390 A.2d at 995; *accord Estate of Chappelle v. Sanders,* 442 A.2d 157, 158 (D.C.1982) (required "affirmative acts" of fraud); *Woodruff v. McConkey,* 524 A.2d 722, 728 (D.C.1987) (required "something of an affirmative nature"). *See also Norfleet v. Rosen,* 539 A.2d 1089 (D.C.1988).

The court applied the fraudulent concealment doctrine to toll the statute of limitations in a case where defendant committed deliberate fraud in preventing defendant from knowing that he may have a cause of action. In *William J. Davis, Inc. v. Young,* 412 A.2d 1187 (D.C.1980), plaintiff worked for defendant-employer at the minimum wage. When the minimum wage was increased, defendant concealed that increase from plaintiff by paying him the same weekly wage but, in its own records, fraudulently reducing the total number of hours plaintiff worked. The court reiterated that, for the fraudulent concealment doctrine to apply, "defendant must have done something of an affirmative nature designed to prevent discovery of the cause of action." 412 A.2d at 1191. Since "affirmative facts" indicated that the employer intended deliberate fraud, and since plaintiff appeared to be an "unsophisticated employee," the court held that the statute of limitations should be tolled until plaintiff discovered or reasonably should

---

**8.** In his reply brief, plaintiff attempts to show his due diligence by enumerating all the "dozens and dozens" of contacts plaintiff has pursued in seeking redress. Plaintiff's Reply Memorandum, May 9, 1988, at 9–10. Although plaintiff's exhaustive effort to enlist the aid of union officials, government officials, government agencies and others is commendable, we are not convinced that it is directly relevant to plaintiff's due diligence in discovering the existence of his legal cause of action, or, in this case, his legal right to file a lawsuit.

have discovered that his claim existed.[9] 412 A.2d at 1192–93.

In advancing his fraudulent concealment argument, plaintiff again relies entirely on the letter he received from the then Director of the D.C. Department of Corrections at the time of his termination. As discussed earlier in this memorandum opinion, defendant cannot be said to have induced plaintiff into filing his lawsuit. Even, however, assuming he did so, he did not in any way act affirmatively in preventing plaintiff from discovering his cause of action. Additionally, all the foregoing cases addressing the fraudulent concealment doctrine have involved the concealment of the *facts* giving rise to the cause of action, not the concealment of the very existence of the legal right to file a lawsuit as is argued here by plaintiff. Plaintiff cites *Estate of Chappelle* and *Weisberg* for the proposition that "the District of Columbia courts do not limit the fraudulent concealment doctrine to cases in which only the facts underlying a claim have been concealed." Plaintiff's Reply Memorandum, May 9, 1988, at 16. However, neither of these cases stand for that proposition. *Estate of Chappelle* addresses whether concealment of the facts identifying defendants as opposed to the facts revealing the existence of the cause of action itself is enough to invoke the fraudulent concealment doctrine, which the court answered negatively. *Weisberg,* similarly, involved concealment of the facts that would support a legal malpractice claim and the issue before the court was whether those facts had been fraudulently concealed. Thus, when both courts discussed the fraudulent concealment of the *existence* of a cause of action, they were referring to the concealment of the facts giving rise to the cause of action, not to concealment of plaintiff's legal right to file a claim. Plaintiff in the case at bar does not even allege concealment of the facts giving rise to his claim. To agree with plaintiff's argument here

would amount to the adoption of new law requiring employers to notify terminated employees of their legal right to sue in every case where they undertake to notify them of any remedy at all. While we leave open the possibility that in a future case we may find that such a notification of other remedies may by design affirmatively act to prevent a plaintiff from filing suit, we see no reason to adopt a blanket policy requiring every employer who attempts to aid terminated employees by notifying them of immediate remedies to also notify them of their legal right to sue. For all of these reasons, plaintiff does not allege facts that could support an argument that the doctrine of fraudulent concealment should toll the statute of limitations.

■ Accordingly, consideration of plaintiff's Motion For Leave To Amend Complaint Or For Enlargement Of Time, defendant's opposition thereto, plaintiff's reply, and defendant's supplemental oppositions, as well as the arguments of counsel at the hearing held on November 28, 1988, and plaintiff's motion for an oral hearing, and defendant's motion to dismiss the complaint or for summary judgment, and the entire record herein, it hereby is

ORDERED that, for the reasons stated in this memorandum opinion, plaintiff's motion for leave to file an amended complaint is DENIED, and it hereby further is

ORDERED, that plaintiff's motion for enlargement of time in which to respond to defendant's motion to dismiss or for summary judgment is GRANTED, and it hereby further is

ORDERED, that plaintiff shall have until January 17, 1989 to respond to defendant's motion to dismiss or for summary judgment, and it hereby further is

ORDERED, that plaintiff's motion for an oral hearing on his motion to amend was previously granted and oral argument was held, and it is further

---

9. The court was also clearly influenced in its decision by the fact that "[t]he statute of limitations with which we are concerned here is part

of a remedial statute enacted by Congress to protect wage-earners at the bottom of the economic ladder." 412 A.2d at 1192.

ORDERED, that defendant's motion for leave to file a supplemental opposition to plaintiff's motion to amend is GRANTED.

SO ORDERED.