# KNICKERBOCKER LIFE INSURANCE COMPANY *v.* PENDLETON & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

Argued November 11, 1884.—Decided January 5, 1885.

Policy of life insurance being conditioned to be void if the annual premium, or any obligation given in payment thereof, should not be paid at maturity; and the annual premium being paid by a foreign bill drawn by the party insured, with a condition that if not paid at maturity the policy should be void: *Held*, That the forfeiture was incurred by non-payment of the bill, on presentment, at maturity, without protest for non-payment, although protest might be necessary to fix the liability of the drawer. *Semble*, if it had been the bill of a stranger, protest would have been necessary for the forfeiture also.

Presentment and non-acceptance of the bill before maturity, without protest, did not dispense with presentment for payment, in order to produce the forfeiture.

Want of funds in the hands of the drawee was no excuse for not presenting the bill, if the drawer had reasonable expectation to believe that it would be accepted and paid.

Preliminary proof of death not required, if the insurer, on being notified thereof, denies his liability altogether, and declares that the insurance will not be paid.

This action was brought in the First Circuit Court of Shelby County, Tennessee, by the defendants in error, Pleasant H. Pendleton and others, against the plaintiff in error, the Knickerbocker Life Insurance Company, to recover the amount of a policy of life insurance on the life of Samuel H. Pendleton.

After declaration filed the case was removed into the Circuit Court of the United States, and the defendant then pleaded no indebtedness, failure to pay the stipulated annual premium, failure to pay a draft given for premium, and failure to give notice and proof of death. A replication put the cause at issue, and it was tried at Memphis, in November Term, 1880, and a verdict rendered for the plaintiff. Judgment being entered upon this verdict, the case was brought here by writ of error. The matters for the consideration of this court were exhibited in a bill of exceptions taken at the trial, from which it appeared that the plaintiff introduced in evidence the policy sued on, dated July 14, 1870, issued for the benefit of the plaintiffs, as the children of Samuel H. Pendleton, for the sum of $10,000 on his life, in consideration of $364.60 then paid, and of the annual premium of a like sum to be paid on or before the, 14th day of July in every year during the continuance of the policy. The company agreed to pay the sum insured within three months after due notice and satisfactory proof of the death of the person whose life was insured; but the policy contained the following condition, to wit: " The omission to pay the said annual premium on or before twelve o'clock noon on the day or days above designated for the payment thereof, or failure to pay at maturity any note, obligation, or indebtedness (other than the annual credit or loan) for premium or interest hereon, shall then and thereafter cause this policy to be void, without notice to any party or parties interested herein."

The plaintiffs next introduced in evidence the renewal receipt, in the words and figures following, viz.:

### Renewal Receipt.

" Mississippi Valley Branch Office of the Knickerbocker Life Insurance Company at Memphis, Tenn., principal office 161 Broadway, N. Y., renewal No. 94,597.

NEW YORK, *July* 14, 1871.

Received of Pleasant H. Pendleton, &c., three hundred & sixty-four 65-100 dollars, being the premium on policy No. 2346, which is hereby continued in force until the fourteenth day of July 1872, at noon.

☞ Not valid until countersigned by the managers of the Mississippi Valley Branch office at Memphis, Tenn.

ERASTUS LYMAN, *President.*

GEO. F. GRIFFIN, *Secretary.*

Countersigned at Memphis this     day of    18 ,
·45,432.]           GREENE & LUCAS, *Managers."*

The plaintiffs then introduced evidence tending to show that Samuel H. Pendleton died at his home, near Auburn, Arkansas, on the 26th day of March, 1872; that his children, the plaintiffs, were then under age; and that their uncles, A. O. Douglass and W. F. Douglass, on their behalf, wrote from Auburn to Greene & Lucas, the agents of the defendants at Memphis, the former on the 29th of March, and the latter on the 2d of April, 1872, giving them notice of Pendleton's death. A. O. Douglass, in his letter, requested Greene & Lucas to advise him what steps were necessary to be taken in the matter of the policy, and Greene & Lucas at once answered, by letter dated April 2d, that the policy became forfeited on the 14th of October, 1871, by failure to pay the premium, explaining that when the premium became due, they took the draft of Doctor S. H. Pendleton on Moses Greenwood & Son of New Orleans, at three months, in lieu of the cash, conditioned that failure to pay the draft would forfeit the policy; and that Greenwood & Son refused to accept the draft and refused to pay it at maturity. The correspondence was continued by an additional letter from W. F. Douglass to the agents, dated April 9th, and a reply to the same, by the latter, dated April 15, 1872, repeating their position that the policy was forfeited and void, and that there was no legal claim to the insurance.

The defendants below, after an unsuccessful motion for a nonsuit, put in evidence the following draft, given by Samuel

H. Pendleton in part payment of the premium which became due July 14, 1871:

"$325.00.                    Auburn, Ark., *July 14th,* 1871.

Three months after date, without grace, pay to the order of the Knickerbocker Life Insurance Co. three hundred and twenty-five dollars, value received, for premium on policy No. 2346, which policy shall become void if this draft is not paid at maturity.

[Signed]                    S. H. Pendleton.

To Moses Greenwood & Son, New Orleans, La."

Evidence was then introduced by the defendants tending to show that the draft was transmitted by the agents of the company, through the Union and Planters' Bank of Memphis, to the Louisiana National Bank of New Orleans, to be presented for acceptance, and was received by the latter bank and presented on the 29th of September, 1871; that acceptance was refused by Moses Greenwood & Son, the drawees, assigning as the reason of their refusal that they had no advice; that no protest of the draft for non-acceptance was made, because it was marked "no protest;" but that it was returned, on the 30th of September, to the Union and Planters' Bank of Memphis; that it was again transmitted to the Louisiana National Bank, on the 5th of October, 1871, for collection, but was not paid when it became due, and, for the same reason as before, no protest for non-payment was made, and it was returned to the Union and Planters' Bank on the 17th of November, 1871. No direct evidence of presentment to the drawees for payment was given; but the cashier of the Louisiana National Bank testified that, according to their rules and custom of doing business, it must have been presented for payment when due. Evidence was further introduced tending to show that, on or about the 3d of October, 1871, when the draft was first returned from New Orleans, the agents, Greene & Lucas, informed S. H. Pendleton, by letter, of its non-acceptance; and again, on or about the 20th of November, 1871, they informed him in the same way of its non-payment; that in the latter

part of November, or early in December, 1871, he (Pendleton) called on said agents, and expressed surprise that Greenwood & Co. did not pay his draft, but said that they were then prepared to pay it; that the said agents informed him that, as the policy was lapsed by reason of the non-payment of the draft, it would be necessary, in order to reopen the same, that he should be re-examined; and that he promised to call again, but never did; also, that the dealings of the insurance company in reference to the issue of the policy and the payments of premiums thereon, were solely with the said S. H. Pendleton.

Moses Greenwood, of the firm of Moses Greenwood & Son, a witness on the part of the plaintiffs, testified to the effect that his firm were cotton factors and commission merchants, and acted as such for S. H. Pendleton, in 1869, 1870, and 1871, furnishing him supplies for his plantation and selling his cotton crops; and kept a running account with him; and were accustomed to accept and pay his drafts even when he had no money or property in their hands, so that he had good reason to believe that the draft in question would be honored. The witness presented a copy of the account of his firm with S. H. Pendleton, which showed a balance in his favor on the 14th of July, 1871, of about $200, but a balance against him on the 14th of October, 1871, of $502.52. The witness stated that he found no entry of the acceptance or payment of the draft in question, and had no recollection of it other than what was shown by the books and by certain letters from the firm to Pendleton. One of these letters, dated September 29, 1871, informed him (Pendleton) that his draft for life policy (some $330) was presented that day for acceptance; that, having no advice of it, they had requested that it be held till they got an answer from him, and asked him to write at once if he wanted it paid. The other letter, dated November 4, 1871, acknowledged one from him (Pendleton) of the 27th October, and added, "Will pay that insurance note when presented, as you request. This is the first advice we have had about it."

After the evidence was closed the defendant below (the insurance company), through its counsel, requested the court to direct the jury to find a verdict in favor of the defendant on

the ground that the policy sued on was not in force at the time of the death of the person whose life was insured thereby. The court refused to give such direction, and the defendant excepted.

The defendant then requested the court to give the following several instructions to the jury :

1. That upon the undisputed facts appearing from the evidence the defendant is entitled to a verdict.

2. That the reception of this draft for $325 by the defendant on account of premium, imposed upon the drawer or the plaintiffs the duty of making absolute provision for its payment at maturity at the place of payment, and if he or they failed to do so, the defendant was under no obligation to present the same for payment.

3. That the refusal of the drawees to accept the draft when presented for acceptance relieved the defendant from its obligation, if any existed, to present the same for payment in the absence of further notice that the same would be paid when due.

4. That if they believed from the evidence either that the drawer had not placed any funds in the hands of the drawees to meet the draft at its maturity, or that it was in fact presented for payment at or after its maturity, the policy became void and of no effect upon the death of the party whose life was insured thereby, and the plaintiffs are not entitled to recover.

The court refused so to charge, and the defendant excepted.

Thereupon the court proceeded to charge the jury upon the whole case ; but it will only be necessary to present the following extracts, in which the court finds that the charge was erroneous, and upon which the whole case depends.

" The defence of the company is that the condition for payment has been violated, and the policy ceased before the death of Pendleton. This is undoubtedly a good defence unless the law imposed some obligation on the company to perform some duty in respect to the draft which it has not performed, and the neglect of which precludes it from invoking the breach of the condition for payment as a defence. In other words, if by its own laches, and neglect of the duty assumed by it as holder of the draft, the failure to pay has occurred, or the parties have

been injured, the company cannot rely on the breach of this condition as a defence. What, then, were the duties imposed on the company as the holder of this draft by the contract of the parties? . . . I have concluded that the true measure of the duty of the company is to be found in the rules of law governing a holder of commercial paper, and that by the very fact of taking a draft like this they assumed, in reference to this paper, all the duties devolving on a holder of it taken for any other consideration, and were obliged to proceed with it as any holder would be, under the commercial law. On the other hand, any neglect to proceed properly in the discharge of that duty would be excused under the same circumstances as such neglect would be excused with any other holder, and not otherwise. The condition in the policy was a security to the company, of which it can avail itself only by showing a strict compliance with that duty, or some lawful excuse for non-compliance."

"There is no doubt the draft was sent forward for acceptance, presentment, and acceptance refused. . . . It was not protested for non-acceptance, the agents of the company having directed that no protest should be made, and no legal or proper notice of non-acceptance was given to the drawer. This was a clear breach of duty on the part of the company, and precludes it from claiming a forfeiture of the policy unless excused, as to which I shall instruct you further on. If protest and legal notice had been given for non-acceptance, the company need not have presented for non-payment; but, not having protested the note for non-acceptance, it was its duty to present at maturity and demand payment. There is some dispute as to whether the note was presented for payment on the day of its maturity, namely, October 14, 1871, or later, but there is no claim that it was protested for non-payment and legal notice given. The only notice was a letter from the agents, dated November 20, 1871. This was not legal notice, and the drawer was clearly discharged unless the neglect was excused. By this neglect, as well as the neglect to protest and give legal notice for non-acceptance, the company precluded itself from relying on a breach of the condition in the policy."

*Mr. Leslie W. Russell* for plaintiff in error.—Proof of death should have been furnished as required by the policy. Notice alone was not sufficient. *Taylor* v. *Ætna Life Ins. Co.*, 13 Gray, 434; *Davis* v. *Davis*, 49 Maine, 282; *Hincken* v. *Mutual Benefit Ins. Co.*, 50 N. Y. 657. The question of waiver was for the court. The contract was broken by the assured, and was not in force at the time of his death. The premium was not paid when it became due. The draft given was not paid. On its face it showed that the policy was to become void if the draft was not paid. Being a time draft no presentment for acceptance before maturity was necessary. *Bank of Washington* v. *Triplett*, 1 Pet. 25; *Townsley* v. *Sumrall*, 2 Pet. 170. Nor was a protest for non-acceptance necessary. The laws of Arkansas, where the contract was made, govern. *Slacum* v. *Pomery*, 6 Cranch, 221; *Bank of the United States* v. *United States*, 2 How. 711. The Arkansas statutes enforce no special duties. They confirm the law merchant. The decisions of this court will be governed by the general law merchant. *Swift* v *Tyson*, 16 Pet. 1. It is well settled that no particular form of notice is necessary, and that it need not even be in writing. *Cuyler* v. *Stevens*, 4 Wend. 566; *Boyd's Admrs.* v. *Savings Bank*, 15 Gratt. 501; *Cayuga Bank* v. *Warden*, 1 N. Y. 413; *Mills* v. *Bank of United States*, 11 Wheat. 431. And where the notice is received, its mode of transmission is immaterial. *Hyslop* v. *Jones*, 3 McLean, 96; *Bank United States* v. *Corcoran*, 2 Pet. 121. This court has laid down the rule that protest for non-acceptance need not be shown in proceedings for non-payment. *Brown* v. *Barry*, 3 Dallas, 365; *Clarke* v. *Russell*, 3 Dallas, 415. As to presentation for payment at maturity there is no finding on the subject, and it was not necessary. The draft was for the accommodation of the drawer. Notice of non-acceptance having been given him, a demand for payment at maturity as against him was not necessary. *Walker* v. *Stetson*, 19 Ohio St. 400; *Exeter Bank* v. *Gordon*, 8 N. H. 66; *Plato* v. *Reynolds*, 27 N. Y. 586; *Watson* v. *Tarpley*, 18 How. 517. As he had no funds in the drawee's hands no demand was necessary, unless he was justified in expecting it would be paid. *Dickins* v. *Beal*, 10 Pet. 572. In this case he

knew it would not be paid. See *Rhett* v. *Poe*, 2 How. 457;
*Valk* v. *Simmons*, 4 Mason, 113. The drawer suffered no
injury from non-presentment for payment; or if he was in-
jured the injury was waived. The request to present the draft
again for payment, made after knowledge that he had received
no protest, was a waiver of all informalities. *Matthews* v.
*Allen*, 16 Gray, 594; *Thornton* v. *Wynn*, 12 Wheat. 183;
*Sigerson* v. *Matthews*, 20 How. 496. The draft was not a pay-
ment, and the premium was never paid. The giving a receipt
makes no difference. It may always be shown that no money
was actually received. *Bradford* v. *Fox*, 38 N. Y. 289. Re-
taining the draft did not affect the question. *Nichols* v.
*Michael*, 23 N. Y. 264. The draft shows that it was not to
be received as payment unless itself paid. *Roehner* v. *Knick-
erbocker Life Ins. Co.*, 63 N. Y. 160.

*Mr. D. H. Poston* and *Mr. W. K. Poston*, for defendants in
error.—The letters from plaintiff's uncles were both notices
and proofs of death within the meaning of the policy. They
were treated by the company as a sufficient compliance, and
even if not such, further compliance was waived. Upon no
proper rule of construction, can the words "satisfactory proof"
be held to mean sworn proofs. This court, in a case where the
policy stipulated to pay "ninety days after due notice and sat-
isfactory evidence of death," ruled that the proof need only be
as to the sole fact of death. *Insurance Co.* v. *Rodel*, 95 U. S.
232. To the same effect is the case of *Insurance Co.* v. *Schwenk*,
94 U. S. 593. So in Massachusetts it was decided that only
such proof as was required by the policy was necessary, and
that neither the usage of the particular company, nor the gen-
eral usage and understanding of insurance companies generally,
could determine what should be necessary, unless plaintiff knew
or had notice of it when he took the policy. *Taylor* v. *Ætna
Life Insurance Co.*, 13 Gray, 434. It is true that it has been
decided that such a stipulation of the policy requires sworn
proofs, as in *O'Reilly* v. *Guardian Ins. Co.*, 60 N. Y. 169.
But that is an unsatisfactory solution. The question being un-
settled in this court, we insist upon the construction hereinbefore

contended for as the proper logical and reasonable construction. The proposition that such a state of facts as appears in this record establishes a waiver of preliminary proofs is supported by an overwhelming weight of authority. We cite from this court *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 How. 390; *Insurance Co.* v. *Warehouse Co.*, 93 U. S. 527, 546; *Columbia Life Ins. Co.* v. *Lawrence*, 10 Pet. 507. The letter relied upon as notice of the dishonor of the draft for non-acceptance was not a valid notice. A notice given before dishonor is premature. 2 Daniel Negotiable Instruments, § 1035, 3d Ed. 87. If valid otherwise, it was not posted in time. *Bank of Alexandria* v. *Swan*, 9 Pet. 33; 2 Daniel Negotiable Instruments, § 1039, 3d Ed. p. 90. Coming from the drawee it was invalid. *Stanton* v. *Blossom*, 14 Mass. 116. The proposition that the law of Arkansas governs is not sustained by authority. The law of the place of payment governs. *Pierce* v. *Indseth*, 106 U. S. 546. See *Bird* v. *Bank*, 93 U. S. 96; *Munn* v. *Lake*, 4 How. 263. Pendleton had the right to draw, and reasonable ground to expect that his draft would be honored. Where a bill is not received in absolute payment of a debt the failure to present, and, in case of dishonor, to properly notify the drawer, releases him both on the draft and on the original debt. Daniel Negotiable Instruments, § 1276; *Smith* v. *Miller*, 43 N. Y. 171. Where forfeiture of a policy of insurance is claimed for non-payment of the premium, and the failure to pay was caused by the omission of the company to do some precedent act, which it had either agreed to do, or even by its usual course of dealing induced the assured to believe it would do, then it is estopped to claim the forfeiture. *Insurance Co.* v. *Eggleston*, 96 U. S. 572; *Insurance Co.* v. *Doster*, 106 U. S. 30. The conduct of one party to a contract, which prevents the other from performing his part, is an excuse for non-performance. *United States* v. *Peck*, 102 U. S. 64; *Young* v. *Hunter*, 6 N. Y. 203.

Mr. Justice Bradley delivered the opinion of the court. He recited the facts as above stated, and continued:

The court instructed the jury, in substance and effect, that the insurance company, having accepted the draft or bill of

Dr. Pendleton on his factors for the premium due on the policy, was in duty bound to pursue all the steps necessary to enable it to recover against him as drawer of said draft or bill, regarded as a bill of exchange under the law merchant—amongst which steps one was that of protesting the bill for non-acceptance, and another, that of protesting it for non-payment. The court held that, whilst it was not necessary that the draft should have been presented for acceptance before maturity, yet that, having been so presented, and acceptance refused, the defendants ought to have had it regularly protested, and notice of dishonor given to the drawer. The court further held, that if the draft was presented for payment, and not paid, the defendants were bound to have had it regularly protested for non-payment. True, it was conceded, that the defendants might be excused from the performance of these duties if it were shown that the drawer had no funds in the hands of his factors, and had no reasonable expectation that his draft could be accepted. But, unless this excuse could be established, the doctrine of the charge was, that the defendants must have complied with all the before-mentioned formalities incident to commercial paper, in order to entitle them to the benefit of the condition for avoiding the policy.

As the drawer of the bill in this case was really interested in the policy on behalf of his children, we do not concur in the view taken by the court below, that a forfeiture of the policy required, on the part of the insurance company, as holders of the bill, the same diligence, and performance of the same acts, as were required of them to make the drawer liable upon it. For the latter purpose a regular protest for non-acceptance, or non-payment, or a proper excuse for omitting them, such as want of funds in the hands of the drawees, was undoubtedly necessary; for, according to the general law prevailing in this country, the draft was a foreign bill of exchange, being drawn by a person resident in one State upon persons resident in another. *Buckner* v. *Finley*, 2 Pet. 586, 589; *Dickins* v. *Beal*, 10 Pet. 572, 579; Story on Bills, §§ 23, 465; 1 Daniel Negotiable Instruments, §§ 6–9. But whether the policy would not be forfeited without any such protest, or excuse

for non-protest, is a different question, depending upon the contract of the parties. This contract was expressed on the face of the draft itself, which contained a statement that it was given for premium on policy No. 2,346, followed by this condition : " which policy shall become void if this draft is not paid at maturity." This was the condition and the only condition on which the policy was to become void. The primary condition expressed in the policy itself, of forfeiture for non-payment of the premium on the day it became due, was waived by the receipt of the draft, and the consequent extension of the time thereby. The renewal receipt given when the draft was received was absolute, it is true, acknowledging the receipt of the premium, and declaring the policy continued in force for another year. But this receipt is explained by the actual transaction, the mode of payment being shown to be the making and delivery of the draft in question, having in it the condition above expressed, which condition was in exact accordance with the secondary condition contained in the policy, namely, " failure to pay at maturity any note, obligation, or indebtedness (other than the annual credit or loan) for premium or interest hereon, shall then and thereafter cause this policy to be void, without notice to any party or parties interested herein." We think it clear, therefore, that, notwithstanding the renewal receipt, the condition expressed in the draft was binding on the insured. As we have shown, that condition was that the policy should become void if the draft was not paid at maturity. The draft, being without grace, matured on the 14th of October, 1871. If not paid on that day the policy was forfeited, unless it was the usage of the New Orleans banks to grant days of grace even when they were waived, of which there was some evidence on the trial. In such case the forfeiture would take place, if the draft were not paid on the 17th of October. Of course, it must be presented for payment on the one day or the other—for the drawees could not pay it unless it was presented, for they would not know where to find it. But supposing it to have been presented for payment, and payment refused by the drawees, then the condition of forfeiture was complete. Protest and notice of non-payment

might be further necessary to hold the drawer, if the insurance company desired to hold him; but they were not necessary to the forfeiture. That occurred when non-payment at maturity or presentation occurred. The drawer, Pendleton, who took entire charge of the policy for his children, put its existence on the condition of payment of the draft at maturity; and it was his business, as agent or guardian of his children, to see that the draft was thus paid; that the requisite funds were in the hands of the drawees, or that they would pay it whether in funds or not. Such, we think, was the clear purport of the condition, and as the court below took a different view, holding that the insurance company was bound not only to present the draft for payment, but to have it protested for non-payment, before a forfeiture of the policy would ensue, the judgment must be reversed.

What might have been the result had the bill of a stranger been taken in payment of the premium, is a different question which we are not now called upon to decide. It may be that in such a case the company would have been required to take all the steps necessary to fix the liability of all the parties to the bill.

With regard to the other points raised by the plaintiffs in error a few words will suffice.

1. They contended at the trial, and contend here, that no presentment of the draft was necessary, because Pendleton had no funds in the hands of the drawees. The substance and effect of the charge given by the court on this point was, that if Pendleton had a reasonable expectation that the draft would be accepted and paid; as if there was an agreement between him and the drawees, that they would accept his drafts, or a course of dealing between them in which the drawees were accustomed to accept his drafts without reference to the state of their mutual accounts, he was entitled to demand and notice; or, according to our view of the principal point in the case, the insurance company was bound to present the draft for payment at its maturity. In this we think there was no error. The law is laid down substantially to the same effect in *Dickins* v. *Beal*, 10 Pet. 572, 577; and see 2 Daniel Negotiable Instruments, § 1074.

2. The plaintiffs in error contend that as the draft was not accepted by the drawees when presented for acceptance, they were under no obligation to present it for payment at maturity. This would be so in an ordinary case of non-acceptance of a bill, provided it was followed up by protest and notice. But this particular draft, or bill, had a condition in it, that the policy should be void if it were not paid at maturity, and the plaintiffs in error claimed the benefit of this condition. As forfeitures upon condition broken are to be strictly construed, the condition in this case could not be regarded as broken by the non-acceptance of the bill before maturity; but could only be broken by non-payment at maturity. The drawees might not have felt authorized to accept the bill when it was presented; and yet, when it came to maturity, in consequence of further advice from the drawer, or other reasons, they might be ready and willing to pay it. The holders of the policy were entitled to this opportunity of obviating a forfeiture. We are of opinion, therefore, that the court below was right in holding that a presentment for payment was necessary notwithstanding the non-acceptance.

3. The plaintiffs in error further contend that the charge was erroneous in holding that no formal proof of the death of S. H. Pendleton was necessary in this case. On this point the charge was as follows: " As to the proof of loss not being filed, it is conceded notice of the death was given. If, when that was done, the agents of the company repudiated all liability, and informed the parties that the policy had lapsed, then no proof of loss was required by them, and the failure to file it cannot alter the case." We think that there was no error in this instruction. The weight of authority is in favor of the rule, that a distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of the loss or death. It is equivalent to a declaration that they will not pay, though the proof be furnished. *Tayloe* v. *Merchants' Fire Insurance Co.*, 9 How. 390, 403; *Allegre* v. *Maryland Insurance Co.*, 6 H. & J. 408; *Norwich & N. Y. Transportation Co.* v. *Western Mass. Insurance Co.*, 34 Conn. 561; *Thwing* v. *Great Western*

*Insurance Co.*, 111 Mass. 92, 110; *Brink* v. *Hanover Fire Insurance Co.*, 80 N. Y. 108; May on Insurance, §§ 468, 469.

The preliminary proof of loss or death required by a policy is intended for the security of the insurers in paying the amount insured. If they refuse to pay at all, and base their refusal upon some distinct ground without reference to the want of defect of the preliminary proof, the occasion for it ceases, and it will be deemed to be waived. And this can work no prejudice to the insurers, for in an action on the policy the plaintiff would be obliged to prove the death of the person whose life was insured, whether the preliminary proofs were exhibited or not.

*The judgment of the Circuit Court is reversed, and the cause remanded with directions to award a new trial.*