Thomas B. HEFFELFINGER, Appellant,

v.

Marvin GIBSON, Appellee.

No. 6018.

District of Columbia Court of Appeals.

Argued Jan. 12, 1972.

Decided April 21, 1972.

James F. Bromley, Washington, D. C., with whom James C. Gregg, Washington, D. C., was on the brief, for appellant.

Herbert P. Suskind, Washington, D. C., for appellee.

Before KERN and YEAGLEY, Associate Judges, and CAYTON, Chief Judge, Retired.

CAYTON, Judge.

Appellee Gibson, an orthopedic surgeon, recovered a judgment in the amount of $542.50 against appellant Heffelfinger, an attorney, in a suit based on an assignment agreement. Bringing the case here for review, appellant contends that the assignment made by his client, the patient, created no liability on his part, despite his sepa-

rate promise therein, and that in any event appellee's right to recovery was barred by limitations.

The facts in brief are these. Elizabeth Strassburger suffered injuries as the result of an automobile accident in Maryland in 1962 for which she received medical treatment by appellee Dr. Gibson. She retained appellant Heffelfinger to bring an action in her behalf against the driver of the other car. Heffelfinger then advised the doctor by letter that he was representing Mrs. Strassburger in her litigation and requested a preliminary report of the diagnosis, a summary of the care and treatment rendered and a prognosis of her condition. Along with his reply to these requests the doctor sent to Heffelfinger a form of "Assignment" to be signed by the patient-client. Strassburger, with a separate paragraph to be signed by the attorney Heffel-finger. The paper was signed by both as requested, and is set out in full in the margin.[1] Upon its receipt, the doctor furnished to Heffelfinger the reports he had requested.

In 1963, having completed his services to Mrs. Strassburger, the doctor sent to Heffelfinger a final bill for services rendered in the amount of $1,042.50. The doctor also sent bills to Heffelfinger in 1964 and 1965, and also called him twice during 1966 to remind him of the bill. In August 1967, the doctor's secretary telephoned Heffelfinger's office and was told for the first time that the suit had been settled, that a different attorney, in Maryland, had handled the matter, and that Heffelfinger had received none of the money paid Mrs. Strassburger in the settlement. This was the first indication to appellee that any attorney other than appellant was acting for

[1]

**ASSIGNMENT**

To: Attorney Mr. Thomas B. Heffelfinger  Doctor Marvin M. Gibson, M. D.
Address Investment Building     Address 809 Viers Mill Road
    Washington 5, D. C.         Rockville, Maryland

I do hereby authorize the above-named doctor to furnish you, my attorney, with a full report of his examination, diagnosis, treatment, prognosis, etc., of myself in regard to the accident in which I was involved.

I hereby authorize and direct you, my attorney, to pay directly to the said doctor such sums as may be due and owing him for medical service rendered me both by reason of this accident and by reason of any other bills that are due his office, and to withhold such sums from any settlement, judgment or verdict as may be necessary to adequately protect the said doctor. And I hereby further give a lien on my case to the said doctor against any and all proceeds of any settlement, judgment or verdict which may be paid to you, my attorney, or myself as the result of the injuries for which I have been treated or injuries in connection therewith.

I fully understand that I am directly and fully responsible to the said doctor for all medical bills submitted by him for service rendered me and that this agreement is made solely for the said doctor's additional protection and in consideration of his awaiting payment. And I further understand that such payment is not contingent on any settlement, judgment or verdict by which I may eventually recover the said fee.

Dated:
   April 4, 1962         /s/ Elizabeth L. Strassburger
                  Patient's Signature

The undersigned, being attorney of record for the above-named patient, does hereby agree to observe all the terms of the above and agrees to withhold such sums from any settlement, judgment or verdict as may be necessary to adequately protect the said doctor above-named.

Dated:
   April 5, 1962         /s/ Thomas B. Heffelfinger
                  Attorney's Signature

Attorney: Please date, sign and return one copy of this assignment to the doctor's office, keeping one copy for your records.

Mrs. Strassburger in connection with her claim. It later appeared that Heffelfinger had turned the matter over to an attorney named Earl Davis for suit in Maryland.

On advice of appellant, the doctor reminded Mrs. Strassburger by letter that she owed him $1,042.52. He later received a check from her for $500 under the date of September 30, 1967. Subsequently, appellant sent a letter to Davis on August 13, 1968, with a copy to appellee, requesting that suit be filed immediately on behalf of the doctor for the unpaid portion of his fee against Mrs. Strassburger in New York where she then was residing. He closed his letter to Davis with the statement, "We must take this action or personally take care of the balance due Dr. Gibson." Two years later, on September 28, 1970, the doctor filed this action against Heffelfinger for his failure to protect the doctor's fee as required in the agreement of April 5, 1962. As already stated, the decision of the trial court held Heffelfinger liable.

■ Appellant argues that he was not liable to appellee under the agreement because he had turned Mrs. Strassburger's case over to another attorney, Davis, and none of the funds paid to her in the settlement of her lawsuit ever passed through his hands. That circumstance is not enough to relieve him of his obligation. In clear language, he had specifically agreed,

> to withhold such sums from *any* settlement, judgment or verdict as may be necessary to adequately protect the said doctor above-named. (Emphasis added.)

For appellant to have avoided liability under this agreement would, in our view, have required a novation,[2] *i.e.*, an acceptance by the doctor of an assumption by Davis of appellant's existing obligation. Nothing like this was shown or even suggested here.

In addition, we note appellant's proffer for the record that his name appeared (along with that of Davis) on the complaint in the suit filed by Davis in Maryland, that he was kept informed by Davis of offers of settlement, that he obtained the approval of Mrs. Strassburger to the final order of settlement, and that he received statements from Davis showing the distribution of funds received in the settlement, including a forwarding fee to him. There is nothing in the record to show that appellant ever withdrew from his representation of Mrs. Strassburger, or, if he did, that he ever gave notice thereof to appellee. Accordingly, it must be held that though none of the settlement funds passed through his hands, appellant's obligation to the doctor remained valid and effective.

■ Second, appellant contends that the claim against him was barred by the statute of limitations.[3] There is one circumstance which by itself is sufficient to remove the cause of action from the operation of the statute: Heffelfinger's acknowledgment of the contract after he learned that Mrs. Strassburger had failed or refused to pay. D.C. Code 1967, § 28–3504, provides:

> In an action upon a simple contract, an acknowledgment . . . by words only

2. *See* Restatement of Contracts § 165 (1932).

3. D.C.Code 1967, § 12–301. Limitation of time for bringing actions
    Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
    .    .    .    .    .

(7) on a simple contract, express or implied—3 years . . . .
(This defense was pleaded in the answer but subject to the reservation that it might be withdrawn at any time. At trial appellant stated that he wished the case to be decided on the basis of the validity of the Assignment only, but felt bound by any defenses asserted by his attorney, who also represented his insurance carrier.)

is not sufficient evidence of a . . . continuing contract whereby to take the case out of the operation of the statute of limitations . . . *unless the acknowledgment or promise is in writing, signed by the party chargeable thereby* . . . . (Emphasis added.)

The acknowledgment must be made either to the creditor or to someone acting for him, or to some third person with intent that it be known by and influence the action of the creditor. Grass v. Eiker, D.C.Mun.App., 123 A.2d 613 (1956). A distinct and unequivocal acknowledgment of the debt as a still subsisting personal obligation constitutes an implied promise to pay it, and takes the contract out of the statute. Hayden v. International Banking Corp., 59 App.D.C. 313, 41 F.2d 107 (1930); Green v. Reeves, 47 App.D.C. 83 (1917). We conclude that Heffelfinger's letter to Davis written on August 13, 1968, before the statute had run (a copy of which he sent to appellee) containing the words, "We must take this action or personally take care of the balance due Dr. Gibson," was, under the criteria set forth above, sufficient to toll the statute.

Appellant also argues that since appellee was obligated as Mrs. Strassburger's physician to furnish both of them with medical reports, his promise to appellee was without consideration and of no force or effect from the beginning, citing Emmett v. Eastern Dispensary and Casualty Hospital, 130 U.S.App.D.C. 50, 396 F.2d 931 (1967). We cannot approve this contention, and we hold that there was good and valid consideration here. Heffelfinger requested "a preliminary report . . .

containing your diagnosis, care and treatment to date, along with any possible prognosis that you might be able to make at this time." Such report was prepared and furnished appellant, and contained some records not normally kept in the course of medical practice. *Emmett* stands for the proposition that the physician-patient privilege does not allow a hospital to deny decedent's son access to the existing hospital records in the son's suit against the hospital for wrongful death. Appellant cites no case, and we have found none, holding that a doctor is legally obligated to give special reports to his patient's attorney to aid in a suit for damages. In addition, appellee's agreement to defer payment of his fee seems to us to constitute at least some consideration supporting the promise. "An extension of time given by a creditor to his debtor is a sufficient consideration for a third person's promise." Corbin on Contracts § 139 (1963), and cases collected, n. 70; *accord,* Rogers v. First National Bank of Birmingham, 282 Ala. 379, 211 So.2d 796 (1968); Yarbo v. Neil B. McGinnis Equipment Co., 101 Ariz. 378, 420 P.2d 163 (1966).[4]

Appellant contends finally that the trial court erred in refusing to permit cross-examination of the doctor as to the content of certain correspondence with the patient. The record leaves some doubt as to the basis of the ruling and the line of examination intended. But on a careful review of all the circumstances, we are satisfied that in limiting cross-examination as he did, the trial judge did not commit prejudicial error.

Affirmed.

---

4. Since we conclude that there was consideration, we do not reach the issue of promissory estoppel, which otherwise might serve as a basis for enforcing this contract. *See* Restatement of Contracts § 90, Promises Reasonably Inducing Definite and Substantial Action (1932);

Brown v. Lamb, 134 U.S.App.D.C. 314, 414 F.2d 1210 (1969), cert. denied, 397 U.S. 907, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970) and cases collected, n. 3; N. Litterio & Co. v. Glassman Constr. Co., 115 U.S.App.D.C. 335, 319 F.2d 736 (1963).