**EMERSONS, LTD., and Emersons, Ltd. of Cinnaminson, Inc., Plaintiffs,**

v.

**MAX WOLMAN COMPANY, and Home Insurance Company, Defendants and Cross-Claimants.**

**Civ. A. No. 74-974.**

United States District Court, District of Columbia.

Jan. 27, 1975.

Philip L. Cohan, David G. Bress, Martin Jacobs, Washington, D.C., for plaintiff Emersons, Ltd., and others.

Joseph F. Cunningham, Washington, D.C., for defendant Max Wolman Co.

Gary W. Brown, James C. Gregg, Washington, D.C., for defendant Home Ins. Co.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This matter came on for trial before the Court, sitting without a jury, on November 26, 1974. Plaintiffs Emersons, Ltd., et al. (hereinafter "Emersons"), seek to recover under an insurance policy a stipulated business interruption loss of $244,069.58 for its Cinnaminson, New Jersey, restaurant. The restaurant was destroyed by a fire which occurred on or about February 13, 1973. Defendants, Home Insurance Company (hereinafter ("Home"), and its general agent, Max Wolman Company (hereinafter "Wolman"), cross-claimed against one another for indemnification or contribution for any damages awarded, and for other relief.

Jurisdiction is conferred upon this Court by Title 28 U.S.C. § 1332 (diversity of citizenship). Plaintiff Emersons is a Delaware corporation with its prin-

cipal place of business in the State of Maryland. Defendant Wolman is a District of Columbia corporation with its principal place of business in the District of Columbia. Defendant Home is a New Hampshire corporation with its principal place of business in the District of Columbia. The amount in controversy exceeds $10,000, exclusive of interest and costs.

The parties orally stipulated that the law of the District of Columbia would apply to all questions of law herein.

## I. INTRODUCTION.

During the fall of 1972, Defendant Wolman undertook to procure for Plaintiff Emersons a "package" insurance policy which would include coverage for loss of business earnings, commonly referred to as "business interruption coverage". Emersons directed Wolman that the policy should extend to all of its operating restaurants as well as to certain designated proposed restaurants, including Emersons' restaurant in Cinnaminson, New Jersey.

At all times, Wolman was a general agent for Defendant Home and Home authorized Wolman through a general agency agreement to bind Home orally to policy coverage.

In October of 1972, Wolman and Home met twice at Home's Baltimore office to discuss Emersons' requested insurance coverage. At the first meeting, Wolman presented a list of approximately thirty-five existing and proposed Emersons restaurant locations, including Cinnaminson, to be covered under one business owners policy. At the second meeting, Home agreed to a special request by Wolman for complete business interruption coverage for all locations. Wolman then submitted another document, ordering from Home on behalf of Emersons the business owners insurance. The policy was to cover twenty-three specified Emersons restaurants, including Cinnaminson, and was to become effective November 1, 1972. On December 29, 1972, Home issued Emersons a package insurance policy, including business interruption coverage, for the twenty-three restaurant locations listed in the aforesaid order. The policy indicated that November 1, 1972, had been the effective date.

On January 29, 1973, the Cinnaminson restaurant opened for business. Approximately two weeks later, on February 13, it was destroyed by fire.

Shortly after the fire, Wolman notified Home of the amount of business interruption coverage claimed at Cinnaminson. It indicated that Home should cover the loss, regardless of the absence of a binder or specific dollar amounts, because it had orally agreed in October to provide business interruption coverage under the policy which became effective November 1, 1972, and because it had subsequently issued an endorsement to the policy showing Cinnaminson as a covered site.

Following notification of the fire and prior to expiration of sixty days after the fire, Home denied business interruption coverage for the Emersons restaurant in Cinnaminson. Home did, however, acknowledge that there were both fire and contents coverages for the restaurant and immediately paid the amounts claimed under those coverages.

Emersons filed this claim on June 27, 1974, for the stipulated sum of $244,069.58 for its business interruption loss.

## II. THE LIMITATION PROVISION OF THE INSURANCE POLICY IS NO BAR TO THIS SUIT.

Defendant Home argues that Plaintiffs' failure to meet the requirements of the insurance policy's limitation provision bars the insured from recovering under the policy. That provision demands that suit be brought within twelve months after occurrence of a loss.

The facts show that Home, through its attorneys, expressly requested Emersons to delay filing suit to recover under the policy so that settlement negotiations could continue. Undisputed testi-

mony establishes that Home asked Emersons, approximately two weeks before the end of the twelve-month period, to "hold off the suit". Home told the insured, "If we can determine the amount of loss, we will pay."[1] Following this conversation, Emersons mailed a confirmatory letter to Home,[2] and in reliance on Home's request, delayed filing suit. Good faith negotiations continued up to and beyond the end of the twelve-month period.

It is well-settled that a defendant is estopped from asserting a limitation as a bar to a claimant's action if

" . . . it appears he has done anything that would tend to lull the plaintiff into inaction."

Hornblower v. George Washington University, 31 App.D.C. 64, 75, 14 Ann.Cas. 696 (1908).[3]

Here, the insurer specifically requested that suit not be filed and that the parties reach an amicable settlement. Therefore, Home may not now raise the contractual limitation as a defense.

Centennial Insurance Co. v. Dowd's Inc., 306 A.2d 648, 651 (D.C.Ct.App.1973).[4]

## III. EMERSONS' FAILURE TO FILE A "PROOF OF LOSS" WITH HOME IS NO BAR TO RECOVERY.

Defendant Homes contends that the Plaintiffs' failure to comply with the policy's requirement that sworn, written proof of loss be filed within sixty days after the loss occurred bars recovery because the insured introduced no evidence to justify this failure.

The record shows that both Home and Wolman were given immediate notice of the fire,[5] and that Home denied business interruption coverage within sixty days of the loss.[6]

Where an insurer denies liability during the period prescribed by the policy for the presentation of proofs of loss, on the ground that the loss was not covered by the policy, the insurer waives the provision of the policy requiring that proofs be presented. General Cas. Co. of America v. Gunion, 99 A.2d 643,

---

1. Testimony of Donald Chaikin, Esquire, attorney for Emersons.

2. This letter, from Mr. Chaikin to counsel for Home, was received in evidence as Plaintiffs' Exhibit No. 24.

3. See Property 10–F, Inc. v. Park & Process, Inc., 265 A.2d 290, 291 (D.C.Ct.App. 1970); McCloskey & Co. v. Dickinson, 56 A.2d 442, 444 (D.C.Mun.Ct.App.1947).
Cf. Brown v. Lamb, 134 U.S.App.D.C. 314, 414 F.2d 1210 (1969), cert. denied, 397 U.S. 907, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970); Howard University v. Cassell, 75 U.S.App. D.C. 75, 126 F.2d 6 (1941), cert. denied, Cassell v. Howard University, 316 U.S. 675, 62 S.Ct. 1046, 86 L.Ed. 1749 (1942); Glennan v. Lincoln Investment Corp., 71 App. D.C. 365, 110 F.2d 130 (1940); Moore v. Snider, 71 App.D.C. 293, 109 F.2d 840, cert. denied, Snider v. Moore, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1029 (1940), where courts applied the Hornblower rule but came to the conclusion that estoppel would be inappropriate under the circumstances.

4. Accord, Kron v. Young & Simon, Inc., 265 A.2d 293, 295 (D.C.Ct.App.1970); Roumel v. Niagara Fire Ins. Co., 225 A.2d 658, 660

(D.C.Ct.App.1967); Annot., 29 A.L.R.2d 636 (1953). (Insurer's admission of liability, offers of settlement, negotiation, and the like, as waiver of, or estoppel to assert, contractual limitation provision).

5. J. P. Radney, President of Emersons, telephoned Wolman the day after the fire and reported the loss. Wolman responded that Radney should not worry since Emersons was covered.

6. Testimony of Donald Chaikin and Jack Krajick.
In July, Home formalized its oral refusal by issuing a written amendment to Emersons' package policy (Plaintiffs' Exhibit No. 2, admitted into evidence). The amendment was back-dated to February 15, two days after the fire, and read:
"All coverages applicable to Location Number 17 and Building Number 1, being 506 Route 130, Cinnaminson, New Jersey are deleted from this policy."
It is curious that Home, while denying Emersons business interruption coverage under the policy, willingly paid all losses from the fire under the building and contents coverages of the policy.

646–47 (D.C.Mun.Ct.App.1953).[7] Therefore, this Court holds that Home's oral denial of business interruption insurance constituted a waiver of any rights it otherwise might have had as to this type of coverage under the sixty-day provision of the policy.[8]

## IV. THERE IS NO ASSUMED, ADMITTED, OR GENERAL "DUTY TO INFORM" WHICH WOLMAN COULD HAVE BREACHED, AND WOLMAN WAS ACTING WITHIN THE SCOPE OF ITS AUTHORITY AS A GENERAL AGENT.

Emersons contends that it is entitled to recover under the business owners insurance policy issued by Defendant Home on December 29, 1972, but that should it fail to recover under the terms and conditions of the policy, it is then entitled to recover against the Defendants in negligence.

Emersons bases its alternative negligence claim on Wolman's failure to forward to its principal, Home, projected sales and opening date information on the Cinnaminson site. This information was in the agent's possession prior to the loss, and Home alleges in its cross-claim that receipt of such information by the carrier is a "condition precedent" to the issuance of a business owners insurance endorsement for any location. The Insurance Company considers it tortious conduct that Wolman never furnished the opening date and projected sales figures for the Cinnaminson restaurant before the fire on February 13, and Home argues that if the Court adopts the tort theory, then Wolman should be held solely liable. The pleadings thus present the issue whether Wolman breached a duty to report the requisite data.

Home contends first that the existence of a "duty to inform" was "assumed" by the parties when the insurance contract was originally negotiated. The evidence shows, however, that in spite of Home's contention, the parties assumed no such duty. Emersons, Home and Wolman met in November, 1972, after the date of policy inception, and discussed various coverages, including business interruption. No mention was made at the time, by anyone, that receipt of projected sales or date of a restaurant's opening was a necessary prerequisite for business interruption coverage. Additionally, Jack Krajick, formerly an underwriter for Home and now an officer with Wolman, testified that Home had informed him in October, 1972, that business interruption coverage would extend automatically to the specified sites. Krajick further stated that it had never been his understanding with Home that a carrier would need projected sales or opening date of a location for any purpose other than premium computation and determination of amount of business interruption coverage for a given site.

Home argues second that the existence of a duty to inform was "admitted" by Wolman. The record reveals, however, that no such duty was ever admitted by Wolman—or by any other party or witness. The only evidence which might be considered an admission is the affidavit of Jack Krajick, which stated that conveyance of such information was the "normal procedure". However, this affidavit was prepared and submitted for Krajick's signature by Home's attorneys, and Krajick later testified at trial that to the extent of his knowledge, the procedure was not mandatory. This Court, therefore, accords Krajick's affidavit no credibility.

---

7. "A distinct denial of liability and refusal to pay on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of loss or death. It is equivalent to a declaration that they will not pay, though the proof be furnished." Knickerbocker Life Ins. Co. v. Pendleton, 112 U.S. 696, 709, 5 S.Ct. 314, 320, 28 L.Ed. 866, 870 (1885).

*See also* Royal Ins. Co. v. Martin, 192 U.S. 149, 162–63, 24 S.Ct. 247, 48 L.Ed. 385 (1904).

8. *Accord.* Annot., 49 A.L.R.2d 161 (1956) (Denial of liability as waiver of proofs of loss required by insurance policy), 44 Am.Jur.2d Insurance §§ 1514, 1517–18 (1969).

Home's third and final contention is that a "general" duty to inform exists in the trade. Undisputed expert testimony shows, however, that no such general duty to inform does exist. Mr. Kenneth Ashton, responsible for all general agency insurance sales for the Floyd E. Davis Company of Washington, D. C., testified as the only expert and the only non-party witness at the trial. Ashton stated that he had been in the business of selling liability insurance for approximately twenty-five years and was currently representing a number of liability insurance carriers as a general agent. Ashton testified that he had placed annually numerous business owners policies which included business interruption coverage. He further stated that, in his experience, any duty which might otherwise exist for an insured or a general agent to obtain prior approval of the carrier for extension of business interruption coverage, is eliminated where, as here, negotiation and agreement between a carrier and its agent in themselves extend coverage to specified sites. He further stated that if receipt of such information were to be considered a condition precedent to the extension of business interruption coverage to any location, such a requirement would be explicitly spelled out by the carrier.

■ The Court therefore finds that there is no assumed, admitted or general duty to inform which Wolman could have breached: Wolman was acting within the scope of its authority as a general agent. The agent disclosed its principal, Home, to the plaintiffs, and, as far as the Court can discern, acted under a fair assumption when it represented to the plaintiffs prior to November 1, 1972, that business interruption coverage would extend to every newly-acquired Emersons location as soon as Wolman received notice. Home, as the principal, has not carried its legal burden of showing that Wolman, its agent, exceeded its authority.

Submission by an agent to a carrier of a location's projected sales figures or opening date would be important only in determining the amount of business interruption coverage for a given location and the premium to be charged under the contract. It would not be important in determining whether coverage at a previously agreed-on site would actually be in force under the contract. Such was the testimony of Kenneth Ashton at the trial. The Court therefore turns to the question of liability under the contract.

V. THERE IS NO CONDITION PRECEDENT TO THE CONTRACT WHICH REQUIRED THAT HOME RECEIVE THE ALLEGED INFORMATION BEFORE THE POLICY WOULD TAKE EFFECT.

■ Emersons, in Count I of the complaint, and Wolman, in its cross-claim against Home, contend that the contract must prevail because all the parties had contractually-defined relationships. Both Emersons and Wolman argue that the mutual intent of the parties to the contract, as reflected by the written terms and endorsements of the policy, and the evidence concerning the negotiation and effectuation of the policy, must govern with regard to all obligations arising thereunder. This theory is sound, and the Court adopts it.

■ Home responds, however, that receipt of projected sales figures and opening date information was a condition precedent to the contract, and that under the contract, business interruption coverage would not extend to a given location until this condition had been met as to each specific location.

■■ Courts traditionally refuse to interpret ambiguous conditions in contracts as "conditions precedent", Edmund J. Flynn Co. v. Schlosser, 265 A. 2d 599 (D.C.Ct.App.1970); Bergman v. Parker, 216 A.2d 581 (D.C.Ct.App.1966), and courts regularly resolve ambiguities in insurance contracts against the insurer. See American Cas. Co. of Reading, Pa. v. Shefferman, 193 A.2d 428 (D.C.

Ct.App.1963); Nationwide Mutual Ins. Co. v. Schilansky, 176 A.2d 786 (D.C. Mun.Ct.App.1961). Here, the only condition which might be considered "ambiguous" is not even in the contract.

There is an absolute absence in both the insurance policy and the agency agreement of a contract provision referring to the conditions precedent alleged by Home. Emersons and Wolman each claim to have had no knowledge of such conditions precedent and argue that no parties to either contract contemplated such conditions. Furthermore, according to the evidence adduced at trial, Home regularly provides all other types of business insurance without attaching any conditions precedent as to receipt of estimated sales figures or opening dates. The Court therefore holds that there is no condition precedent to the contract which required that Home receive the alleged information before the policy would take effect.

Home insists, however, that it could have re-insured itself against eighty per cent of Emersons' loss had it received the information in question before the fire. This may be true, but if re-insuring itself against possible loss were such an important aspect of the carrier's financial security as to require it to demand that certain information be submitted before it would extend coverage, then that demand should have been included in a provision of its contract with either Emersons or Wolman. Since it was not, and there is no evidence of any agreement to this effect beyond the contract, this Court cannot rewrite the contract to provide Home with the kind of protection it should have demanded during the original contract negotiations.

### VI. HOME IS SOLELY LIABLE TO EMERSONS UNDER THE INSURANCE POLICY AND MUST INDEMNIFY WOLMAN FOR THE COST OF THE SUIT.

As held above, Emersons may recover under the terms and conditions of the insurance policy. An insurance agent, acting on behalf of a disclosed carrier principal in procuring insurance policies for a client, does not become a party to the insurance contract and may not be liable for damages caused by breach of the insurance contract by the insurance company. Hodgson v. Dexter, 1 Cranch, C.C. 109, 1 D.C. 109, Fed.Cas. No. 6, 565, aff'd, 5 U.S. 345, 1 Cranch 345, 2 L.Ed. 130 (Cir.Ct.D.C.1802); Resnick v. Abner B. Cohen Advertising, 104 A.2d 254 (D.C.Mun.Ct.App.1954). Home, therefore, is solely liable under the contract.

Furthermore, Home's cross-claim against Wolman for contribution must fail, as Wolman was under no duty, contractual or otherwise, to forward the alleged requisite information to Home. Wolman at all times acted within the scope of its authority as a general agent to its disclosed principal, Home. See Middle Atlantic Conference v. United States, 353 F.Supp. 1109 (D.D.C.1972).

On the other hand, Wolman's cross-claim against Home for indemnification does have some merit. The general agency agreement between Home and Wolman included, among other provisions, an indemnification and hold-harmless clause, protecting Wolman against claims by insureds resulting from errors committed by Home, and also providing that Home would assume the costs of defense for which the agent might become obligated.

Wolman has sustained real damages in the loss of a large and valued client, and the costs of preparing for the defense of this case. It therefore is appropriate to invoke the terms of the agency agreement. The Court directs that the costs to Wolman of the defense of this claim, including reasonable legal fees, be assessed against Home.

### VII. EMERSONS IS NOT ENTITLED TO PREJUDGMENT INTEREST.

Emersons' final contention is that the Court in its award of damages should include interest, commencing ninety days after the fire, on the stipulated

amount of the business earnings loss.[9] Plaintiffs argue that under the circumstances ninety days was a reasonable period of time within which Home should have paid the claim, and that failure to pay amounted to an "unjust detention" of the funds.

The stipulated loss of business earnings was $244,069.58, and Emersons claim that it has been paying fourteen per cent interest on all its loans over $250,000 since the fire.

It is fair to assume, as Wolman argues, that the parties undertook the stipulation on the assumption that the figure of $244,069.58 would reflect the entire amount of exposure to damages; the matter of interest as an element thereof was never perceived as an additional risk factor by the Defendants. Had interest been raised by Plaintiffs' counsel, the stipulation may never have been entered into.

Clearly, the issue was not argued at trial, nor was any evidence submitted on the question. It is therefore inappropriate at this point in time for the Plaintiffs to seek interest in some heretofore unspecified sum. In fairness, the Court will not allow such interest to be levied against the Defendant Home except from the date of judgment herein.

## VIII. CONCLUSION

For the reasons discussed hereinabove, this Court holds: that the Defendant Home Insurance Company is solely liable under the insurance contract to the Plaintiff Emersons for the stipulated amount of $244,069.58; and that the Defendant Home Insurance Company must indemnify the Defendant Max Wolman Company for reasonable counsel fees incurred by it in defense of the claims against it herein, plus court costs as are

allowable by the Clerk and the Rules of this Court.

This opinion shall constitute the Court's findings of fact and conclusions of law. A judgment of even date herewith is being filed with the Clerk of this Court today.

---

9. D.C.Code § 15–109 (1973) provides in pertinent part:

"In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. *This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.*" (Emphasis added.)